FRANKLIN C. JOCELYN *et al.*

*v.*

CHARLES G. WHITE *et al.*

*Opinion filed February 18, 1903.*

1. PRACTICE—*party may abide by demurrer without giving notice to that effect.* It is not necessary to preserve defendant's rights under a demurrer, that he give notice or have an entry made of record of his intention to abide by the demurrer, and he will be regarded as abiding by it if he fails to plead over and suffers default.

2. SAME—*cross-examining witnesses before master not a waiver of demurrer.* Cross-examining complainant's witnesses at the hearing before the master, after default, is not a waiver of the defendant's rights under his overruled demurrer.

3. PLEADING—*what not essential to bill for foreclosure.* It is not essential to a bill for foreclosure, under the general chancery practice, that the mortgage and notes be set out *in hæc verba* or that copies thereof be attached to the bill, provided such instruments are identified by proper description and referred to in apt words.

4. SAME—*when a foreclosure bill is obnoxious to demurrer.* A bill to foreclose a mortgage which is filed before the expiration of the time extended for payment, as shown in the bill, is obnoxious to demurrer where it fails to show that any event has taken place authorizing complainant to declare the debt due at his option.

5. SAME—*facts authorizing holder to declare debt due must be alleged.* An allegation that complainant in a bill to foreclose a mortgage "under the option granted him as holder," etc., has declared the

mortgage due, is not sufficient, in the absence of an allegation of the facts which authorize him to exercise such option.

6. SAME—*effect where judgment has been taken on interest coupon.* If judgment has been taken upon a coupon note for interest, the note becomes merged in the judgment, and the mortgage no longer stands as security for the note but for the judgment, and to authorize the inclusion of the amount of the judgment in the foreclosure decree the judgment should be declared upon in the bill.

*Jocelyn* v. *White*, 98 Ill. App. 50, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

CHESTER FIREBAUGH, for appellants.

STILLMAN & MARTYN, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

In this case a writ of error was issued out of the Appellate Court to the circuit court, and the Jocelyns, husband and wife and mortgagors, and the Watkinses, who the bill alleges were subsequent purchasers, assigned separate errors. Upon affirmance of the decree by the Appellate Court the cause was brought to this court upon appeal, and again separate errors were assigned by the Jocelyns and the Watkinses.

The errors chiefly relied upon by the Watkinses are, that the court improperly overruled their demurrer, and that the allegations of the bill are not sufficient to support the decree rendered. The Jocelyns assigned a number of errors, and those relied on are, (*a*) that copies of the notes and mortgage sued on were not attached to the bill or set out *in hæc verba* in the bill; (*b*) that it is not alleged in the bill that the principal note was due and unpaid at the time of filing the bill, or that either of the interest notes was due and unpaid when the bill was filed; (*c*) that there is no allegation in the bill of any con-

201—2

dition in the mortgage or notes authorizing the holder of the notes to accelerate the maturity of the indebtedness by declaring the same due before maturity; (*d*) there is no allegation in the bill of default in the performance of any of the supposed provisions of the instrument sued upon; (*e*) that the allegations of the bill with respect to solicitor's fees are insufficient to support the decree; (*f*) that the facts constituting the plaintiffs' supposed cause of action are not set out, but merely the legal conclusion of the pleaders therein; (*g*) "it does not show a right to foreclose; does not aver the notes sued upon were due and unpaid; does not show the terms of the alleged extension agreement; does not show the condition of the trust deed; does not support the allowance in the decree of $500 solicitor's fees; does not support the inclusion in the decree of the superior court of judgment for $628.24; does not state facts sufficient to constitute a cause of action."

The first question presented is as to the effect of the demurrer, and the overruling of it, as to the appellants, the Watkinses. Appellees say, and the Appellate Court held, that the Watkinses had abandoned their demurrer, because, first, when the demurrer was overruled and before the default the Watkinses did not expressly say and have it entered of record that they abided or stood by their demurrer; and second, that it is shown by the record that they appeared before the master when the evidence was being taken, and cross-examined certain witnesses offered by appellees.

Upon the proposition that it was necessary for the Watkinses, in order to preserve their rights under the demurrer, to have had some entry of record made showing that they stood by it, or in some manner give notice to appellees that it was their intention to do so, no authority has been furnished by appellees that we think either decisive of or tending to support it. Two authorities are cited and relied upon,—*Bruschke* v. *Nord Chicago*

*Schuetzen Verein*, 145 Ill. 433, and *Gage* v. *Rohrbach*, 56 id. 262.   As we read these authorities, neither of them supports, but rather tends to refute, appellees' contention. In the *Bruschke case* a demurrer was interposed and overruled. Without ruling to answer or granting leave to answer, the defendants were defaulted and decree entered *pro confesso.*   In discussing the question we said (p. 443): "The correct practice on overruling a demurrer to the bill is not to render a decree, but to make an order requiring the defendant to answer, and if he does not do so, to take the bill as confessed. We have held, however, that the question whether a defendant should be ruled to answer was one of discretion, and would not be reviewed in this court. (*Miller* v. *Davidson*, 3 Gilm. 518; *Roach* v. *Chapin*, 27 Ill. 194; *Wangelin* v. *Goe*, 50 id. 459). In the *Wangelin case* it was said that there was no irregularity in proceeding to a decree upon overruling the demurrer to the bill, if the record showed that the defendant elected to abide by the demurrer. Such was the case here."   We further said: "For the reasons hereinafter stated, the decree sought to be reviewed was erroneous for errors appearing upon its face; and where such is the case,—that is to say, where a demurrer to a bill of review, grounded upon error, is overruled,—the decree may be reversed without any further hearing."   Appellees' view seems to be that the words "such was the case here," at the end of the first quotation above, are to be interpreted to mean that the record showed that the demurrant had elected to abide by the demurrer.   From the statement of the case there is nothing to show that there was any entry of record to the effect that the demurrant had elected to stand by the demurrer, and we think that the concluding sentence of the quotation above referred to related to the state of the case as shown by the entire paragraph to which it belongs. In the *Gage case, supra*, the defendant interposed a demurrer, which was overruled, and the defendant was ruled to answer,

and failing to do so was defaulted. Without waiting for a final decree the defendant prayed an appeal from the order overruling the demurrer, and this court held that the appeal was wrongfully allowed, as there was no final decree from which to appeal, and in discussing the question said (p. 265): "After overruling the demurrer, the court, without any further steps against plaintiff, [meaning plaintiff in error,] unless he had asked and obtained leave to answer, had the undoubted right to decree the relief against plaintiff in error on the demurrer, which admitted the truth of the allegations of the bill, and the court might then have rendered a final decree granting relief against him."

The view of appellees is, that because the demurrants prayed an appeal from the overruling of their demurrer, that was the thing that fixed their status as having abided the demurrer. Of course, if the Watkinses had answered the bill when ruled to answer they would thereby have waived their demurrer. *Bauerle* v. *Long,* 165 Ill. 340; *Miller* v. *Davidson,* 3 Gilm. 518.

Appellees say that if the Watkinses had given notice that they were going to abide their demurrer they might have amended their bill. We cannot regard this as an argument supporting the contention that it was the legal duty of the demurrants to do more than to fail to answer over after their demurrer had been overruled, but rather as an excuse, if any can be offered, for the defects, if any, in the bill. This demurrer was general and special, and it pointed out, substantially and with reasonable particularity, the defects now complained of, and appellees could not insist that it was the duty of the Watkinses to threaten some other or further procedure or some more dire result than would naturally follow the overruling of the demurrer. This is a chancery proceeding, and no exception was necessary or proper. (*Hawk* v. *McCullough,* 21 Ill. 219.) When the demurrer was overruled and the Watkinses failed to answer within five

days, as required by the rule of the court, the court properly took the view that they had elected to abide their demurrer and were in default, and could have then entered a decree, as to the Watkinses, *pro confesso*, and if they had been the only parties defendant, could have entered a final decree in the case. In the case of *Miller* v. *Davidson, supra*, the only statement as to the conduct of the demurrant is: "The bill was demurred to by the defendants; the demurrer was overruled, and they have declined answering over." In *Roach* v. *Chapin, supra*, the language there used is (p. 197): "The correct practice in chancery causes, upon overruling a demurrer to the bill, is, not to render a decree, but the order should be that the defendant answer the bill, and if he neglect to do so the bill may be taken as confessed." Upon what theory is the bill to be taken as confessed? Surely not upon the theory that the defendant has abandoned his defense, for he did not withdraw his demurrer nor did he answer over. The latter he neglected to do, and it must have been upon the theory that he would be allowed to abide his demurrer.

In *Nye* v. *Wright*, 2 Scam. 222, a demurrer was interposed to a declaration, but was not disposed of. The cause proceeded to trial upon the record containing the following entry: "This day again came the parties, by their attorneys, and issue being joined, put themselves upon the country for trial," etc., "who found a verdict for plaintiff below, and judgment was rendered thereon. It does not appear from the record that the demurrer filed in the cause was disposed of or decided, unless the entry on the record, as above stated, waived the demurrer. The practice is well settled that the defendant, by filing a plea to the declaration, waives an antecedent demurrer; but as the record shows a demurrer filed, it ought to appear distinctly from the record that defendant had consented to waive the demurrer and had filed a plea. In case a plea is relied on as a waiver the plea

should be set out in the record. The mere allegation in the record that issue was joined is not sufficient." This ruling was followed in *Bradshaw* v. *McKinney*, 4 Scam. 54, *Bradshaw* v. *Hoblett*, id. 53, and *Moore* v. *Little*, 11 Ill. 549.

If, then, one does not waive his undisposed of demurrer by proceeding to trial without plea and without calling it up, it would seem that the court would be going very far to hold that he had waived his rights thereunder where such a demurrer was in fact overruled, merely because he failed to expressly give notice to the court, and to have the same entered of record, that he had elected to abide by such demurrer. There were but two things for the Watkinses to do, either to abide by their demurrer or to plead over; failing to do the latter the law implied that they did the former. In *Jackson* v. *Glos*, 144 Ill. 21, we said: "The amended record * * * shows that the cause coming on to be heard on the demurrer of the plaintiff in error to the bill of the defendant in error, the demurrer was overruled, and the plaintiff in error was ruled to answer within ten days, and the record shows that she did not make such answer, and so she is to be considered as abiding by her demurrer."

Little need be said as to the contention that the appellants the Watkinses waived the demurrer by attending the taking of the testimony before the master and cross-examining witnesses. This right has always been accorded a defendant who is in default, and has been many times passed upon. In *Bauerle* v. *Long*, 165 Ill. 340, we were considering a case where an answer had been filed to part of the bill and a demurrer to part. The demurrer was overruled and the defendant was ruled to answer further, which he failed to do, and his default was taken upon the whole bill. He appeared before the master, and it was urged that he had waived his right of demurrer. On that point we said (p. 347): "After such order it was in the discretion of the chancellor to enter a decree *pro confesso* or refer the cause to the master to take

proof and report, and when so referred the defendant had a right to appear and cross-examine the witnesses for complainants. Of this right he was not deprived. He had no right to offer evidence of matters of defense not set up in an answer."

This brings us now to the consideration of the bill with a view to determine whether or not it was obnoxious to a demurrer and whether it was sufficient upon which to base the decree. The first point insisted upon under this head is, that the bill was bad because the mortgage and notes sued on were not set out *in hæc verba* in the bill or copies of the same attached to the bill. Upon this question appellees cite 9 Encyclopedia of Pleading and Practice, 373, where this language is used: "The bill or complaint should set out the mortgage, either by attaching the original or copies, or by incorporating them into the body of the pleading." The authorities upon which this theory of the practice is based are *Herren* v. *Clifford,* 18 Ind. 411, *Hiatt* v. *Golbt,* 18 id. 494, and *Triplett* v. *Sayre,* 3 Dana, 590. In Indiana it was also held that a cross-complaint in foreclosure was insufficient upon demurrer, where neither the mortgage nor a copy was filed therewith. It will be observed that these States practice under codes, and their decisions would hardly be applicable to the chancery practice in States adopting the common law practice and procedure. Besides, in Indiana, under the code, the complaint or petition stands both as a declaration and a bill in chancery, under which either legal or equitable relief may be granted, and in a foreclosure proceeding, although the foreclosure may be denied, a personal judgment may be obtained. When the latter is sought, the law requires that a copy of the instrument sued on shall be attached to the complaint, the same as our practice at common law in actions of assumpsit. In two cases much more recent than those referred to, we find the Supreme Court holding that a copy of the note secured by mortgage need not be set out in a

complaint which merely seeks a decree foreclosing the mortgage. (*Shin* v. *Bosart*, 72 Ind. 105; *Sperry* v. *Dickson*, 82 id. 132.) Mr. Jones, in his work on Mortgages, touching such a bill, says (sec. 1452): "The general requisites of the complaint are, that it should allege the execution and delivery of the mortgage and of the note or bond secured by it; the names of the parties to it; the date and amount of it; when and where recorded; a description of the premises; the amount claimed to be due, and the default upon which the right of action has accrued. It must show, also, the complainant is entitled to maintain the action, and that the defendants have, or claim to have, certain interests in the premises or liens upon them. If the plaintiff is not the mortgagee, his right to maintain the action by virtue of an assignment, bequest or otherwise must be set forth with reasonable fullness and certainty. The terms and conditions of both the mortgage and of the bond or note secured by it should be set out. This may be done by proper recitals in the complaint itself, or by annexing copies of those instruments which are referred to in the complaint and made part of it." In Perkin's edition of Daniell's Chancery Pleading and Practice (vol. 1, p. 372,) this language is used: "It should, however, be noticed, that in stating deeds or other written instruments in a bill it has been common to refer to the instrument itself in some such words as the following, viz.: 'As in and by said indenture, reference being thereunto had when produced, will more fully and at large appear.' The effect of such a reference is to make the whole document referred to part of the record. It does not make it evidence. In order to make a document evidence, it must, if not admitted, be proved in the usual way; but the effect of referring to it is to enable the plaintiff to rely upon every part of the instrument, and to prevent his being precluded from availing himself, at the hearing, of any portion, either of its recital or operative part, which may not be in-

serted in the bill or which may be inaccurately set out. Thus it seems that a plaintiff may, by his bill, state simply the date and general purport of any particular deed or instrument under which he claims, and that such statement, provided it is accompanied by a reference to the deed itself, will be sufficient." The same author, in note 3 to the above quoted article, says: "But on the argument of a demurrer he cannot avail himself of the portion not set out,"—citing *Harmer* v. *Gooding*, 3 DeGex & Sm. 410. On the same page the author proceeds: "It is obvious that this method of stating the plaintiff's title is somewhat inconvenient. It is always necessary, in drawing bills, to state the case of the plaintiff clearly, though succinctly, upon the record; and in doing this, care should be taken to set out precisely those deeds which are relied upon and those parts of the deeds which are most important to the case."

From the above quotations we understand the rule to be, that if the complainant in the bill relies upon a written instrument, and has so described the instrument as to identify it, and then by apt words specifically refers to the instrument, he may, if demurrer be not interposed, upon the trial of the cause have the benefit of the instrument and all its provisions, but that if the bill, on its face and in apt terms, does not contain all the allegations necessary to show him to be entitled to the relief prayed, the bill will be obnoxious to demurrer, but if the bill be not demurred to, but be answered or default made, and the instrument so referred to, when offered in evidence, shows the right of the plaintiff to his relief, then in such case the bill will be sufficient to support the decree.

In *Moore* v. *Titman*, 33 Ill. 358, which was a foreclosure proceeding, the defendants were defaulted, and on the coming in of the decree a motion was made by them to set it aside on the ground that the bill was insufficient to support such a decree. Upon this the court said (p. 364):

"Exceptions are taken to the sufficiency of the allegations of the bill. It is insisted that the allegation that plaintiff in error and his wife 'made, executed, acknowledged and delivered a certain deed of mortgage' does not imply that it was duly executed and became a valid mortgage. We think the allegation is sufficient, and can only be construed to mean that it was properly made and valid in its operation. But if this were not so, the instrument is referred to as an exhibit, which has the same effect as if copied at large into the bill. The court will refer to the exhibit to see if it sufficiently appears to have been so executed."

It is true, that in most of the works on practice and pleading in chancery the forms given suggest the making the notes and mortgage exhibits to and parts of the bill and attaching copies thereof; but after careful consideration and investigation we are unable to find and have been cited to no case in any court of appeal in any State where the chancery practice obtains as it existed in England, and unaffected by codes, which has held that a failure to attach copies of the notes and mortgage to the bill as exhibits renders the bill obnoxious to demurrer. It is doubtless a safer and better practice to do so, but that reason alone does not make the bill demurrable because it is not done. The bill in this case on its face shows that the debt or principal note, according to its terms, had not matured. It states that the original note of $20,000 was due in three years from the 13th day of March, 1893; that it drew interest at six per cent to maturity and seven per cent after maturity; that the interest was payable half-yearly, on the first days of January and July, and that the several installments of interest were evidenced by certain coupon notes attached to the original note; that at the time of the maturity of said principal note the time of the payment of said principal sum was extended, by the same terms and conditions expressed in said notes and the trust deed, to and until

March 13, 1899, to bear interest at the same rate; "that the several installments of interest to accrue on said notes as so extended were also evidenced by extension interest coupon notes; that all of said original interest coupon notes, and said extension interest coupon notes numbers 1, 2 and 3, have been fully paid and are canceled, and that said extension interest coupon notes numbers 4 and 5, due, respectively, January 1, 1898, and July 1, 1898, are unpaid and outstanding, as will more fully appear by said notes hereinafter more particularly specified, ready to be produced upon the hearing hereof." Neither the principal note, nor either of the original interest coupons, nor either of the interest extension coupons, nor the trust deed, or copies thereof, were attached to the bill, and the only further reference made to the notes, or any of them, in the bill, is the averment that appellee is the owner thereof; that he became the owner before the maturity thereof, respectively, "and that there is now due your orator upon said notes and for disbursements under said trust deed the following sums, with interest thereon as in said trust deed provided, and in addition thereto a reasonable solicitor's fee incurred by your orators in the conduct of this proceeding, which your orators ask may be fixed by this honorable court, to-wit: Principal note for the sum of $20,000, which your orator, Charles G. White, under the option granted him as the holder thereof, in and by said deed of trust, hereby declares to be now due and payable, $20,000; extension interest coupon No. 4, January 1, 1898, $600; extension interest coupon No. 5, July 1, 1898, $600; redemption from tax sale paid June 15, 1897, $19.39." The averments as to the trust deed are: "That to secure the payment of the principal sum, and interest thereon, and disbursements, as hereinafter stated, the said Franklin C. Jocelyn and Harriet M. Jocelyn, his wife, made, executed and delivered a certain deed of trust of even date with said notes, and thereby conveyed to your orator, Frank R.

Chandler, as trustee, the following described real estate, situated in the county of Cook and State of Illinois, to-wit: [describing the real estate,] together with all improvements and appurtenances thereunto attached or belonging, subject, however, to a condition of defeasance upon the payment of the principal sum and interest secured thereby, as aforesaid, and the necessary expenses of said trust, according to the provisions of said trust deed, which said deed of trust was duly acknowledged, and afterwards, to-wit, on March 15, 1893, was recorded in the recorder's office of Cook county, aforesaid, in book 4251 of records, at page 241, as by the said trust deed and its accompanying certificates of acknowledgment, and recording, (or a certified copy thereof,) ready to be produced in court upon the hearing of this cause, will more fully appear." Appellees then set out in their bill other following conditions of the trust deed against suffering the land to be sold for any tax or assessment, or suffering any mechanic's lien to attach to said premises, or permitting anything to be done to impair the value thereof, following that by provisions as to insurance, and then allege "that in case of refusal or neglect of said party of the first part thus to insure, or assign any policy of insurance, or to pay taxes or assessments before the commencement of the annual tax sale of said county, or to keep the buildings on said premises in good repair, then said party of the second part in said trust deed, or his successor in trust, * * * might, at his or her option, procure such insurance, or pay such taxes or assessments, or redeem from any tax sale said premises, or settle any mechanic's lien suits, or make repairs; and all moneys paid for any such purpose, with interest thereon as therein provided, shall become so much additional indebtedness secured by said deed of trust, and be paid out of the rents and proceeds of sale of the lands and premises aforesaid, if not otherwise paid by the said party of the first part." And a further allegation contains the statement "that it

is further provided in said deed of trust that in case of foreclosure thereof in any court of law or equity, or of any other suit or legal proceeding wherein the said party of the second part therein or his successors in trust, or the holders of said promissory notes, or any or either of them, should be or be made a party by reason of said deed, the reasonable fees and charges of all persons so being or made parties, their attorneys and solicitors, for services in such suits or proceeding, as well also as the cost of continuing the abstract of title to said premises, shall be a further lien and charge thereon, and shall become so much additional indebtedness secured by said deed of trust, and be paid out of proceeds of sale." The only other allegation in the bill is relative to the appointment of a receiver and the interest of the Watkinses.

Thus it will be seen that there is no allegation in the bill that the deed of trust provides anywhere, or under any conditions, that the original debt may be declared due for a breach of any of the conditions of the deed of trust, and appellee White expressly states that there is due him, "principal note for the sum of $20,000, which your orator, Charles G. White, under the option granted him as the holder thereof, in and by said deed of trust, hereby declares to be now due." This latter was but the conclusion of the pleader, and was not the averment of a provision of the trust deed that upon the happening of any or some event he might declare the whole debt due. The allegations of the bill could not be added to the provisions of the trust deed, except in so far as these provisions were set out in the bill. The trust deed was not attached to the bill, and it must be conceded that this bill failed to sufficiently show that at the time of the bringing of the bill, July 27, 1898, which was several months prior to March 13, 1899, when the time of the extension was to expire, the principal note had then matured, or to show that any event had taken place which authorized the holder, by mere option, to accelerate the

maturity of it. The demurrer fully admitted the facts well pleaded, but did not admit the conclusions sought to be drawn therefrom. (*Greig* v. *Russell*, 115 Ill. 483.) The demurrer should have been sustained.

It further appears from the record that one of the extension interest notes for $600, due January 1, 1898, and described in the bill as extension interest coupon note No. 4, was on January 29, 1898, entered into judgment in the circuit court of Cook county under a power of attorney which formed a part of the note, as a like power did in all the notes secured by said mortgage, said judgment being had at the suit of appellee Charles G. White and against the appellant Franklin C. Jocelyn; and it also appears that this judgment, with interest thereon and costs, was included in the foreclosure decree. The bill contained no allegation with reference to this judgment, but, on the contrary, referred only by way of recital to the coupon note that was represented by the judgment. When judgment was taken on this note the note became merged into the judgment, and was no longer, for any purpose, the evidence of any indebtedness from Jocelyn to appellees, and no suit at law or in equity could, after the judgment, be maintained on the instrument. As to this note the character of the mortgage, by entering judgment on the note, was changed, and instead of the mortgage standing as security for the note it then stood as security for the judgment on the note, and to entitle appellees to have had such judgment included in their decree they should have declared on the same. (*Wayman* v. *Cochrane*, 35 Ill. 151; *Leslie* v. *Bonte*, 130 id. 498.) As to this note the allegations of the bill do not support the decree.

For the errors indicated, the judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court of Cook county for further proceedings in conformity with this opinion.                    *Reversed and remanded.*