## St. Louis Union Trust Company, Appellee, v. Wabash, Chester & Western Railroad Company. John M. Dillavou and Jesse Dimond, Jr., Appellants.

1. RAILROADS—*diligence and a meritorious defense in setting aside foreclosure default.* A railroad company must show due diligence and a meritorious defense to warrant setting aside a default entered against it on foreclosure of a mortgage.

2. RAILROADS—*diligence and a meritorious defense in setting aside foreclosure default by stockholders.* Stockholders of a railroad company which has been defaulted on foreclosure of a mortgage must show due diligence and a meritorious defense to re-open a default.

3. APPEAL AND ERROR—*what errors to appear in abstract.* An abstract must present every error relied on for a reversal.

4. RAILROADS—*lack of diligence in petitioning to open foreclosure default.* Stockholders of a railroad company, which was defaulted on foreclosure, were guilty of lack of due diligence in not petitioning to open the default until after 18 months therefrom.

5. RAILROADS—*defects in pleadings as defense to open a foreclosure default.* A mere technical defense based on a defect in pleading, is not a meritorious defense on the part of stockholders that will authorize the re-opening of the default of a railroad in foreclosure proceedings.

6. RAILROADS—*validity of contract compromising foreclosure suit and renewing the debt.* A contract between a railroad company and its bondholders to renew a bond and mortgage debt is not invalid because it seeks to compromise and get rid of a foreclosure suit and the receiver therein appointed.

7. CORPORATIONS—*assignee of stock suing on transaction assented to by the assignor.* An assignee of stock cannot maintain a suit in regard to transactions with the corporation assented to by his assignor.

8. RAILROADS—*appeal on contract claiming invalidity without evidence on trial thereon.* Stockholders of railroad company seeking to open its foreclosure default cannot claim on appeal that a contract between the company and bondholders to renew a bond debt was invalid as without consent of the public utilities commission, after failing to produce evidence thereon at the hearing.

9. RAILROADS—*renewing railroad mortgage by directors representing total stock.* Authorization of a contract renewing a mortgage against a railroad company by directors representing practically all the stock of the company is the same in legal effect as that of stockholders in a meeting held for the purpose.

St. Louis Union Trust Co. v. Wabash, C. & W. R. Co., 244 Ill. App. 466.

10. RAILROADS—*informal renewal of mortgage as equitable mortgage.* A contract for the renewal of a mortgage on railroad property even though not operating as a renewal for lack of formal requirements, may be regarded as an equitable mortgage.

11. RAILROADS—*defense of improper framing of foreclosure bill under petition to open default.* A claim of a railway stockholder that a bill of foreclosure was not framed on the theory of an equitable mortgage is not a meritorious defense which will enable him to open default taken against the railway company under the bill.

12. FORECLOSURE—*when not barred by limitations.* The right to foreclose a mortgage is not barred by Limitations Act, § 11, Cahill's St. ch. 83, ¶ 11, where, after foreclosure proceedings had been instituted they were compromised under an agreement by which the mortgagee consented that the mortgage debt should continue in force as a binding obligation and was to be paid according to its original terms.

13. FOREIGN CORPORATIONS—*foreclosing mortgage made before license requirements against.* A company appointed trustee in a mortgage made before the State requirement that foreign corporations doing business in this State must have a license, may foreclose the mortgage thereafter though without such license.

14. RAILROADS—*effect of excessive debt beyond assets on stockholders' interest in foreclosure.* With fair cash value of the entire assets of a railroad company only a quarter that of the debts and liabilities, the stockholders have no financial interest in the result of a foreclosure of the railway property.

Appeal by defendants from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1927. Affirmed. Opinion filed July 12, 1927. Rehearing denied August 16, 1927.

WEST & ECKHART, for appellants; WILLIAM L. BOURLAND, JOHN NEAL CAMPBELL and LOUIS C. JESSEPH, of counsel.

GEO. B. GILLESPIE, for appellee; GILLESPIE & GILLESPIE and HUGH J. DOBBS, of counsel.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

The Wabash, Chester & Western Railroad Company (hereinafter called the Wabash Company), on September 19, 1888, executed a mortgage on its property to secure bonds to the amount of $300,000. On December 23, 1892, it executed another mortgage covering the

same property together with other properties acquired from two other railroad companies to secure a bond issue of $1,000,000, containing a recital that one of the purposes for which the mortgage was given was to retire, or take up the first mortgage. Upon the execution of said second mortgage $390,000 of the bonds secured thereby were issued and sold.

In 1914 all of the bonds secured by the first mortgage were still outstanding and had not been exchanged for second mortgage bonds. In July, 1914, a bill was filed to foreclose both mortgages, the first for the full amount thereof and the second for $390,000 together with the interest then due. A decree of foreclosure was entered on June 30, 1916, but there has never been a sale thereunder. On April 17, 1920, a contract was entered into between the holders of the first mortgage bonds, the Wabash Company and the Southern Gem Coal Corporation by the terms of which the first mortgage bonds were exchanged for $300,000 of the bonds secured by the second mortgage, and the second mortgage bonds were to be paid by the Wabash Company according to their terms, with interest from May 1, 1920. The execution of that contract by the officers of the Wabash Company was duly authorized by the board of directors. Thereafter, on March 10, 1922, an order was entered in the said foreclosure suit as follows: "It is further ordered that this cause be removed from the docket as all matters between the complainants and the defendant railroad company are shown to have been amicably settled."

On June 3, 1924, a bill was filed to foreclose the second mortgage for the amount of the bonds which had been issued, viz: $690,000.00 and interest thereon, and for the appointment of a receiver. The Wabash Company, by its president, waived notice of an application for the appointment of a receiver and a receiver was appointed on January 4, 1924. On January 13, 1924, a second bill was filed for the foreclosure

of the same mortgage in which additional averments were made and on March 4, 1924, the two cases were consolidated and the appointment of the receiver was confirmed by the court. By the same order the Wabash Company was defaulted and the bills taken as confessed.

Appellant, Jesse Dimond, Jr., as a stockholder of the Wabash Company, filed a petition in September, 1926, asking that the default of the Wabash Company be set aside and that he and all other stockholders who cared to do so might be allowed to intervene and to plead, answer or demur to the bills of complaint. The petition is too lengthy to set out in this opinion, 21 reasons being assigned therein for the granting thereof. As to the petition of appellant, John M. Dillavou, the abstract simply contains the following statement: "Motion and petition of John M. Dillavou, a stockholder of the Wabash, Chester & Western Railroad Company for himself and such other stockholders as may care to join with him in his motion and petition, the motion and petition being grounded upon the same matters set forth in the motion and petition of Jesse Dimond, Jr., and the same are therefore not again abstracted."

The court denied the petitions and petitioners appealed. If the Wabash Company were asking that the default be set aside and for leave to plead, it would be required to show due diligence and that it had a meritorious defense. *Nitsche v. City of Chicago*, 280 Ill. 268. Appellants concede that the same rule applies to them. Mr. Dimond did not verify his petition, but the affidavit of Mr. Dillavou is attached thereto in which he states that knowledge of the facts set out in the petition first came to Mr. Dimond on or about September 29, 1926. That was purely hearsay and there was no other showing as to when Mr. Dimond learned the facts. The abstract of the record fails to show that the petition of Mr. Dillavou was verified

by anyone or when he acquired knowledge of the facts. An abstract must be sufficient to present every error relied upon as the court will not search the record to find errors not disclosed by the abstract. *People v. Armour,* 307 Ill. 234. The Wabash Company had been defaulted more than eighteen (18) months before the petitions were filed. We would not be warranted in holding that the court erred in its conclusion that appellants failed to show due diligence in asking to have the default set aside.

It is argued that the bonds and mortgage in question were merged in the decree of foreclosure of June 30, 1916, and *Wayman v. Cochrane,* 35 Ill. 152; *Jocelyn v. White,* 201 Ill. 16, and similar cases are cited in support of that contention. Those cases are to the effect that if a judgment has been taken upon a note secured by mortgage, the note becomes merged in the judgment and the mortgage no longer stands as security for the note but for the judgment, and to authorize the inclusion of the amount of the judgment in the foreclosure decree the judgment should be declared upon in the bill. It is apparent, therefore, that this point is merely technical, simply pertaining to a matter of pleading and does not amount to a meritorious defense.

It is argued that the contract of April 17, 1920, is void because it was executed while the property of the Wabash Company was in the hands of a receiver. The contract was made for the purpose of compromising and getting rid of the foreclosure suit and the receiver and we know of no rule of law that would warrant us in holding the contract invalid on that ground. It is argued that the contract is void because the resolution of the board of directors authorizing its execution was passed by the voters of the Coles whose interests were antagonistic to those of the other stockholders. It is a fair inference from the record that appellants did not become stockholders of the Wabash Company until

after the execution of the contract and that those from whom they procured their stock had authorized or ratified the execution of said contract. An assignee of shares of stock in a corporation acquires no greater rights than his assignor, as he holds by the same title and subject to the same liability, and he cannot maintain a suit in regard to transactions with the corporation done or assented to by his assignor. *Babcock v. Farwell*, 245 Ill. 14.

The record discloses that appellants clearly understood that the contract of April 17, 1920, was intended to revive the mortgage and the bonds secured thereby and to make the bonds payable according to their terms. This is shown by the minutes of a meeting of the stockholders of the Wabash Company held on September 29, 1920, called for the purpose of giving consideration to the settlement of the first foreclosure proceedings. At that meeting 12,417 shares of the 12,500 shares of the capital stock of the company were represented. Mr. Dillavou was present in his own behalf and held a proxy to represent Mr. Dimond. The stock of both appellants was then and there voted by Mr. Dillavou in favor of a resolution, the preamble to which reads as follows: ''Whereas, the holders of the bonds of the Wabash, Chester & Western Railroad Company have settled the foreclosure proceedings that have been pending in their behalf in the Circuit Court of Randolph County, Illinois, and said proceedings are to be dismissed; and one of the provisions of the compromise is that the second mortgage so sought to be foreclosed should remain in full force to secure the outstanding bonds, issued and to be issued, but that the clause therein providing that six months shall elapse after any default of the mortgagor before steps for foreclosure may be taken should be abrogated.''

It is argued that the contract did not revive the bonds and mortgage because the reissuance or revival of a former bond issue requires the consent of

the Public Utilities Commission. That contention was not specifically set forth in the petitions. The nearest approach thereto was that "The contract of April 17, 1920, was void as to the defendant railroad company, because there was no compliance by the railroad company with the provisions of the Act of the State of Illinois relating to Public Utilities." It will be observed that nothing is thereby suggested indicating that appellants were claiming that the consent of the Public Utilities Commission should be obtained in order to revive the bonds and mortgage. Appellants offered evidence in support of their petitions, but they offered no evidence upon the subject now under consideration. For that reason they are in no position to urge that question in this court. In any event, there was no new bond issue, but simply an exchange of bonds secured by the first mortgage for bonds of the second bond issue. All parties knew and understood that the second mortgage was to continue in full force and effect for the security of $690,000 of the bonds secured thereby.

It is argued that the mortgage was not legally revived because the revival was not authorized at a stockholders' meeting with the concurrence of the holders of two-thirds (2/3) of the capital stock. The directors who authorized the execution of the contract which revived the mortgage were the owners of all, or practically all of the stock of the Wabash Company and their action was in legal effect that of the stockholders the same as if the latter had acted at a regular meeting for the purpose. *Thomas v. Citizens' Horse Ry. Co.*, 104 Ill. 462. It is argued that a mortgage can only be revived by an instrument having all the formalities necessary to create a valid mortgage. Even if it could be said that the contract of April 17, 1920, did not operate as a revival of the mortgage, at law, yet it would certainly operate as an equitable mortgage. *Peckham v. Haddock*, 36 Ill. 38. But appellants say that the bill should

be framed on the theory that it was for the foreclosure of an equitable mortgage. But if that contention is sound it simply presents a question of pleadings and not a meritorious defense.

It is argued that the right to foreclose the mortgage in question is barred by section 11 of the Limitations Act, Cahill's St. ch. 83, ¶ 11. As long as the mortgage indebtedness exists as a binding obligation on the mortgagor, the mortgage may be foreclosed upon the mortgaged premises. *Richey v. Sinclair*, 167 Ill. 184. We think it fully appears that the Wabash Company and appellants consented that the mortgage debt should continue in force as a binding obligation and that it was to be paid according to its original terms. The bonds do not mature until January 1, 1928.

It is argued that St. Louis Union Trust Company, trustee, in the mortgage, was a foreign corporation doing business in this State and did not have a license at the time of the institution of the suit and that by reason thereof it cannot maintain its suit. *Farmers' Loan & Trust Co. v. Lake St. El. R. Co.*, 173 Ill. 439, and similar cases are cited in support of that contention. We do not think those cases applicable, and are of the opinion that the suit may be maintained under *Richardson v. United States Mortgage & Trust Co.*, 194 Ill. 259.

Some other contentions are insisted upon by appellants. We have given them due consideration and do not deem it necessary to further extend this opinion by discussing each of them. We find that nothing is presented in the way of a meritorious defense.

Appellants stipulated, in the trial court, that the bonded indebtedness and current liabilities of the Wabash Company exceeded $2,000,000 and that the fair cash value of the entire assets of that company do not exceed $500,000. It is quite apparent, therefore, that appellants, as stockholders, have no financial interest in the result of this foreclosure proceeding.

From their own admission their stock is utterly worthless. It is a fair inference that in asking that the default of the Wabash Company be set aside and for leave to plead, etc., they could not have been prompted by a desire to protect their interests as stockholders in the corporation. In any event, appellants failed to show due diligence and a meritorious defense and for that reason the court did not err in denying their petitions. The decree is affirmed.

*Affirmed.*