(No. 21283.—

JOSEPHINE LANDON KELLOGG *et al.* Appellants, *vs.* THE UNION TRUST COMPANY *et al.* Appellees.

*Opinion filed April 23, 1932.*

LESLIE A. NEEDHAM, (RUNYARD & BEHANNA, and NEEDHAM, HUBBARD & MULKS, of counsel,) for appellants.

D'ANCONA, PFLAUM & KOHLSAAT, and ALEXANDER F. BEAUBIEN, for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This appeal is prosecuted to review a decree of the circuit court of Lake county sustaining demurrers of the defendants to the engrossed bill of complaint as amended, denying appellants leave to further amend and dismissing the bill for want of equity.

We will omit the conclusions, arguments, inferences sought to be drawn and repetitions contained in appellants' fifty-five paragraph amended bill and state the salient facts admitted by the demurrers as we glean them.

Nelson Landon in 1871 conveyed certain real estate to his daughters, Emilie J. Hoyt and Helen Josephine Landon, as tenants in common, subject to annuity of $2000 during his lifetime. On March 6, 1877, Miss Landon executed a deed for her undivided interest in the premises to her sister, Mrs. Hoyt, for a consideration of $13,500—$3500 in cash and the balance ($10,000) secured by a note and mortgage of even date. The deed and mortgage were recorded in the recorder's office of Lake county on March 6, 1877. As to these two conveyances it is alleged in the bill that they were without consideration, were never delivered by the grantors, never accepted by the grantees, possession of the premises was never delivered thereunder, and that "if any such deed was executed and delivered by Helen Josephine Landon to Emilie J. Hoyt on March 6, 1877, that the same was procured at the instance, advice, counsel, permission and dictation and direction of W. M. Hoyt, without consideration and in violation of his duty in that regard and for the wrongful and fraudulent purpose and design of thereby acquiring for himself, through his wife, Emi-

lie J. Hoyt, the title, beneficial rights and property of the *cestui que trust."* While the answer to the original bill alleges that this mortgage indebtedness was thereafter paid by Mrs. Hoyt to Miss Landon and a release of the mortgage executed by Miss Landon to Mrs. Hoyt on Decemcember 17, 1888, the amended bill, which was admittedly filed by appellants to attempt to confess and avoid the new matter with reference to the transactions of March 6, 1877, which were not mentioned in the original bill, does not deny such payment or release. Thereafter Nelson Landon, the father, acted upon the conveyances by giving to Mrs. Hoyt a quit-claim deed releasing the premises from the lien of further annuity payments. Notwithstanding the allegations with reference to the deeds of March 6, 1877, the Hoyts did go into possession of the premises, and on December 22, 1892, sold, conveyed and delivered possession of the same to Frank S. Read for a consideration of $118,000—$43,000 cash and the balance evidenced by Read's ten notes, maturing annually, and secured by mortgage from Read to Hoyt. The deed and mortgage were recorded in the office of the recorder of deeds of Lake county on the day of their execution. Read entered into possession of the lands, but failing to make his payments to Hoyt in accordance with the terms of the mortgage it was foreclosed in the circuit court of Lake county and sold at a master's sale to Hoyt for $34,399, the amount of the mortgage indebtedness and costs, and on August 12, 1903, a master's deed of the premises was executed and delivered. Notwithstanding the fact that the consideration for the master's deed to Hoyt was his purchase money notes and the payment by him of the costs of foreclosure, it is alleged in the bill with reference to this deed "that there was no consideration given or paid by said W. M. Hoyt or as consideration for said purchase of said 720 acres of land on August 12, 1903, than the sum due on said foreclosure decree on said Read mortgage, and that none of the consideration was owned or furnished

by said W. M. Hoyt but that the entire consideration furnished and paid therefor was the sole property, assets, lien and security of the said Helen Josephine Landon." Hoyt went into possession of the lands August 12, 1903, and operated the same until October 15, 1915, when he conveyed the same to Gertrude Sholl for $40,000, secured by trust deed on the land and the conveyance by her to Hoyt of improved Chicago property known as the Newberry Hotel, subject to a mortgage of $50,000. The respective deeds and mortgage were duly recorded in the proper counties. Hoyt went into possession of the Newberry Hotel, managed and rented it, paid the taxes and other expenses and received over $11,000 profits annually, which he retained as his own without accounting to any person, and no demand was ever made upon him by Miss Landon for any part thereof and no request for an accounting therefor made by her. Hoyt had title to a large amount of real estate and personal property, and from time to time, ranging from September 29, 1904, to June 21, 1924, made and executed nineteen deeds of trust to various trustees for various beneficiaries of the greater amount of his property, both real and personal, including the Newberry Hotel property.

Miss Landon on September 30, 1920, executed an instrument which in some parts is called a trust agreement and in others a last will and testament, whereby she conveyed all her property, of every kind and nature, to William M. Hoyt II as trustee, with N. Landon Hoyt and the Union Trust Company as successors in trust, specifying certain articles of personal property but no real estate, the trustee to pay to her the income during her life and after her death to divide the trust estate among divers beneficiaries. By the eighteenth clause of the instrument all the rest, residue and remainder of her estate she devised and bequeathed to William M. Hoyt II in trust, to sell and convert into cash such assets as she owned at the time of her death, and after paying certain specific legacies to hold and manage the re-

mainder and to pay one-half of the net income to her niece Josephine Landon Kellogg and one-half to her niece Janette Kellogg Aiken during their respective lives, with remainder to their children, if any. This instrument was witnessed by three witnesses, one of whom was W. M. Hoyt. On April 24 she made a supplemental instrument, in which she changed some of the beneficiaries but left the residuary clause intact. Josephine Landon Kellogg, Janette Kellogg Aiken and three minor children of Mrs. Aiken were the complainants in this suit and are the appellants here.

Miss Landon died April 28, 1924, and the two instruments last mentioned were probated as her last will and testament and letters testamentary issued to William M. Hoyt II. W. M. Hoyt died testate December 18, 1925, and the Union Trust Company and R. F. Chapin were appointed executors of his last will upon its probate. Hoyt's estate is not sufficient to pay the amount claimed to be due Miss Landon from Hoyt at the time of her death.

Appellants in their bill allege that throughout said whole period of time from September 10, 1870, to April 28, 1924, on which date Miss Landon departed this life, William M. Hoyt was the trusted and confidential adviser, agent and manager of all her property, moneys, securities and investments, and that in all such matters and things she was at all times from and subsequent to September 10, 1870, continuously and uninterruptedly completely subject to the domination, control, suggestion, dictation and advice and direction of Hoyt, following, adopting and complying therewith in every instance and on every occasion in all matters and transactions and without any other, different or independent counsel or advice; that although she was during all said period of time, up to the time of her death, possessed of extensive real estate holdings, moneys, property, income and securities, the possession, care, management, acquisition, sale and disposition and investment thereof were at all times committed to and in the actual and exclusive care, custody,

possession, management and disposition of Hoyt; that she never had any business experience and had no knowledge or experience in the acquisition, purchase, sale or disposition of all or any of her moneys, securities, real estate, income and investment, and never at any time, during her whole life, endorsed and deposited any checks or handled or deposited any of her moneys directly in any bank or trust company to her own account or ever at any time maintained any checking or savings account in her own name for such purpose; that while she was aware that she had extensive holdings and a lucrative income, she was by Hoyt furnished on every occasion requested with moneys for which she had any personal need or desire, and was thereby adroitly lulled into absolute confidence, repose and unsuspecting, implicit trust in Hoyt as her confidential agent, adviser and representative, and that Hoyt never at any time repudiated to any one said fiduciary relation and trusteeship for her, and never openly or publicly, during her lifetime, repudiated to her her ownership of all or any of said real estate, moneys, income, interest and securities, the property of Miss Landon, as herein alleged; that there was never, at any time during the lifetime of Miss Landon, any accounting by Hoyt. Appellants also allege that W. M. Hoyt II has refused to account to appellants, as trustee under the agreement or will, for the property received by him as such trustee.

Appellants alleged that Nelson Landon died testate in June, 1884; that by his will he created a trust of $15,000, of which W. M. Hoyt was trustee and Miss Landon beneficiary, and that Hoyt never accounted to her for such trust fund, and that is one of the items for which an accounting is here sought. Appellants, without specifying, charge that at various times Hoyt invested her money in real estate and security which he took in his own name. They also seek an accounting from his estate of moneys received by him in 1885, 1888, 1894, 1898, and at various other times up to

1918, aggregating $120,257, and for the rents and profits of the Newberry Hotel, amounting to $11,000 annually, from 1915 to his death. They ask to have the deed of March 6, 1877, set aside and to have a resulting trust in their favor decreed in the premises described in that deed and also in the Newberry Hotel. They ask to have the nineteen deeds of trust executed by Hoyt from 1904 to 1924 set aside, and all the beneficiaries under the trust, as well as all the trustees, are made parties defendant, as are all Hoyt's heirs, legatees and devisees. The executors of Hoyt's will are made parties defendant, as are the executors and trustees of Miss Landon's will.

The executor of Miss Landon's will and the trustee ap-appointed thereby, as such executor and trustee had nothing whatever to do with the settlement of the Nelson Landon estate, the deeds sought to be set aside, the premises described therein, the Newberry Hotel property, the rents and profits therefrom, or any of the properties in which appellants claim a resulting trust, and never had possession of any of the funds received by Hoyt for which an accounting is claimed. Neither did the heirs, devisees, trustees created by Hoyt, the beneficiaries of such trusts or the executors of Hoyt's last will and testament have any interest in any funds or property turned over to the executor or trustee under the instrument executed by Miss Landon on September 30, 1920, or in an accounting therefor by such executor or trustee.

From the foregoing it will be seen that appellants by their bill have sought relief, based on diversified claims, against various parties in nowise interrelated in defending the claims against their co-defendants. There are two estates involved—the estate of Miss Landon and the estate of W. M. Hoyt. The cause of action against W. M. Hoyt II, as trustee, has obviously nothing to do with the cause of action against the other defendants, including W. M. Hoyt II individually. The defendants to that part of the bill relat-

ing to the estate of W. M. Hoyt are not interested in any way in the defense which W. M. Hoyt II, as such trustee, might be required to make to the charges alleged against him in his representative capacity. Different defenses would have to be made to each of these causes of action, and different decrees would have to be entered should both or either of the two causes of action attempted to be set up in this case be decided in favor of the complainants. The proof necessary to defeat the alleged claims of the complainants against the Union Trust Company and the heirs, legatees and beneficiaries of W. M. Hoyt would be immaterial, incompetent and irrelevant in any defense which W. M. Hoyt II, as trustee of the living trust created by Miss Landon, might make to the supposed cause of action against him as such trustee. Each cause of action should be set up in a separate and distinct bill, and it would be a great hardship to all of the defendants to be burdened with a record which included a vast amount of evidence in nowise appertaining to the respective defendants.

It is contended by appellees that the amended bill upon its face shows that appellants ought to.be barred of any relief thereunder by reason of their *laches* and the *laches* of Miss Landon, extending over a period of more than fifty years, and that the amended bill is multifarious. A bill is multifarious when it seeks to litigate several claims which are in their nature separate from and have no relation or dependence upon each other. (*Sherlock* v. *Village of Winnetka,* 59 Ill. 389; *Ryan* v. *Trustees of Shawneetown,* 14 id. 20.) Among the tests used in determining whether a bill is multifarious are whether the bill improperly joins distinct and independent matters, thereby confounding them, whether the causes of action united in the bill require separate defenses or separate decrees, or whether the bill, fairly construed, shows a single object and seeks to enforce one common right. A bill may be objected to as multifarious if it alleges a claim against a defendant in

his individual capacity and another claim against him as an heir for the debt of his ancestor, or where the bill joins two distinct claims—one against an executor and one against the heir. (*First Nat. Bank of Lincoln* v. *Starkey*, 268 Ill. 22.) A bill in equity which seeks to litigate a number of matters of a distinct and individual nature between the complainant and the various defendants is open to demurrer for multifariousness. As we have seen, the supplemental bill sought to litigate a number of matters of a distinct and individual nature between the appellants and the defendants, and it was by reason of that fact vulnerable to the special demurrer on the ground that it was multifarious. (*Bonney* v. *Lamb*, 210 Ill. 95.) We are of the opinion that the demurrer was properly sustained to the amended bill.

Appellants insist that the court erred in denying leave to file a second amended bill after the demurrer had been sustained to the first amended bill. While in courts of equity great latitude is given to parties with reference to amendments to pleading and it is error to deny leave to amend a bill where such denial would have the effect of depriving one of his day in court, a complainant is not entitled, as of right, to have leave to amend the bill regardless of what the amendment is to be. (*Village of Averyville* v. *City of Peoria*, 335 Ill. 106; *Drew* v. *Drew*, 271 id. 239; *Dilcher* v. *Schorik*, 207 id. 528.) It has always been held in this State, and generally, we believe, elsewhere, that amendments in chancery proceedings are largely within the discretion of the court. (*Taylor* v. *Taylor*, 259 Ill. 524; *McArtee* v. *Engart*, 13 id. 242.) It does not appear from the abstract in this case that there was any abuse of discretion on the part of the chancellor in refusing to allow the proposed amendment which would justify us in reversing the decree.

The decree of the circuit court is affirmed.

*Decree affirmed.*