EMMA S. ALMY *vs.* ALMY, BIGELOW AND WASHBURN, INCORPORATED, & others.

Essex.    January 21, 1920. — February 28, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, & JENNEY, JJ.

*Corporation*, Rights of minority stockholder. *Equity Jurisdiction*, Suit by minority stockholder in corporation. *Equity Pleading and Practice*, Bill.

A demurrer to a bill in equity by a minority stockholder, who also is one of eight directors of a Massachusetts corporation, against the corporation and the other seven directors, who include all the officers of the corporation, to enjoin the defendants from carrying out votes, passed by the seven defendant directors against the objection and vote of the plaintiff, discharging without legal consideration a debt owed to the corporation by one of the defendants and voting to all of the directors and officers except the plaintiff salaries in amounts which differed as to the different defendants but which in each case were excessive and unreasonable, and to compel an accounting by the individual defendants and a repayment of such excessive sums received by them, will be overruled

where, from the allegations of the bill, it appears that four of the seven individual defendants conspired with the other three to deprive and to defraud the plaintiff of her rights as a stockholder and adopted the votes in pursuance of that purpose.

The bill in equity above described was *held* not to be multifarious.

It was not necessary for the plaintiff, before commencing the suit above described, to apply to the corporation to bring suitable action against the individual defendants because it appears from the facts alleged in the bill and admitted by the demurrer that such application would have to be made to the defendants to take action against themselves and either would be futile and unavailing or would result in the authors of the wrong conducting litigation in the name of the corporation against themselves, which would be contrary to the established principles of justice.

From allegations in the bill in equity above described, it appeared that the plaintiff was present at the meeting when the objectionable votes were passed and that she protested and voted against them, and, within six months thereafter, brought the suit. *Held*, that the plaintiff showed proper diligence in asserting her rights.

The bill in equity above described was *held* under the circumstances not to contain matters which were immaterial and irrelevant and therefore in violation of R.L. c. 159, § 12, by reason of the inclusion therein of certain allegations relative to the history of the formation in 1899 of the defendant corporation from a partnership founded in 1858, to other business interests, activities and successes of the plaintiff, to a description of holdings of shares, preferred and common, of the individual defendants and the nature of their interests therein, to past activities of some of the defendants in common with the plaintiff which led to antipathy between them and furnished the motive for the defendants' alleged wrongful conduct, to the fact that one of the defendants was the president of a national bank where the corporation did a large business, and allegations to the effect that in the past the profits of the corporation had been paid, partly in dividends and partly in the form and under the guise of salaries to the large stockholders who owned and controlled substantially the entire issue of the common stock of the corporation.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on November 24, 1919, and afterwards amended, by a minority stockholder and a director of the Massachusetts corporation, Almy, Bigelow and Washburn, Incorporated, against the corporation and seven of its eight directors, seeking to enjoin the alleged improper discharge of a debt owed to the corporation by one of the defendant directors, and the payment of alleged unreasonable and excessive salaries to the defendant directors in accordance with a vote of the directors adopted on June 23, 1919, against the protest of the plaintiff.

Lucy A. Temple, another minority stockholder, was permitted to intervene as a party plaintiff.

The allegations of the bill material to a determination of its merits are described in the opinion.

The allegations objected to by the defendants as stated in the last ground of their demurrer, quoted below, were as follows:

(a) In the first paragraph a historical statement as to the foundation of the partnership of Almy, Bigelow and Washburn in 1858, its incorporation upon the death of the founder in 1899, the value of the shares of the surviving partners as then determined, and the number of shares of the corporation held by the parties plaintiff and defendant at the time when the bill was filed.

(b) In the same paragraph, allegations that the plaintiff was engaged in the department store business in Montreal, Canada, being a director and having the controlling interest in the corporation known as Almy's, Ltd., which owned and operated a very large and successful department store business in that city, and was also a director and third owner of the W. T. Grant Company, which maintained a chain of stores retailing merchandise throughout the country and doing a very large and successful business.

(c) In the fourth paragraph, allegations that the stock holdings in the defendant corporation of the defendant Sanborn, a son-in-law of the defendant Bigelow, the president and a director of the corporation and the active manager of the business, were twenty-five shares of the preferred stock, and that in 1919 he was made a director by votes of the other defendants.

(d) In the fifth paragraph, allegations that one half of the dividends on the seventy-five shares of common stock of the defendant corporation held by the defendant Helen J. Butler (who was a director), as a trustee under the will of James F. Almy, was payable to the plaintiff under the terms of his will and that her acts as set forth in the bill were in violation of her duty to the plaintiff under that trust.

(e) In the ninth paragraph, an allegation that the defendant corporation did a large business with the Merchants National Bank of Salem, whose president was the defendant Henry M. Batchelder, and that he had been a director of the defendant corporation for a long time.

(f) The allegations in the tenth paragraph objected to by the defendants are described in the demurrer.

(g) In the eleventh paragraph, allegations that the plaintiff, with the defendant Bigelow and the defendant Helen J. Butler, were *heavily interested in a department store in Montreal* known as the W. H. Scroggie Company, which company failed in business in the year 1914 and was subsequently reorganized by the plaintiff as Almy's, Ltd.; that the defendants Annable and Sanborn went to Montreal in 1915 and assisted in the management of the store for a brief period during the reorganization; that the defendant Warren H. Butler represented the interests of his mother as an attorney in this matter; that he made a claim for payment for his services at that time, which the plaintiff declined to contribute to in a general settlement of litigation over the matter, and that subsequently the defendants Sanborn and Annable made a substantial claim for additional compensation for their services, over and above substantial salaries which they had received; that this the plaintiff declined to recognize, and that thereupon the defendants, Warren H. Butler, Annable and Sanborn, conceived a feeling of hatred and dislike for the plaintiff with whom they had hitherto been on friendly terms, and formed the intention to deprive her of any share in the management of the business of the defendant corporation which she had hitherto had and to deprive her of her just returns in the form of dividends upon her stock.

The defendants demurred to the bill on the following grounds:

"1. That the plaintiff has not stated in her bill such a cause as entitles her to any relief in equity against these defendants.

"2. Because the plaintiff's bill is multifarious in that it appears therein that it is brought for distinct matters and causes which do not affect all the defendants alike, and which are not so related to each other as to be properly joined in the same bill of complaint.

"3. Because (a) it does not appear by the bill that upon notice and the reasonable request of the plaintiff, the corporation has refused to take action with reference to the matters and things alleged in the bill; (b) it does not sufficiently appear from the allegations of the bill that the corporation is so far under the control of the alleged wrongdoers that any application for relief would be an idle ceremony.

"4. Because it does not appear from the allegations of the bill that the plaintiff has been diligent in protecting her alleged rights at the meeting at which the individual defendants voted

themselves salaries, as alleged in the eleventh paragraph of the bill.

"5. The allegations in the bill do not sufficiently comply with the requirements of R. L. c. 159, § 12, in that the bill contains allegations with reference to many immaterial and irrelevant matters which specifically are as follows:

"(a) In the first paragraph of the bill the statements with reference to the partnership of Almy, Bigelow and Washburn, the interests of the partners therein, and the amounts to the credit of the various partners in 1899; the statements with reference to the original issue of the common shares of the defendant corporation; the allegations with reference to the issues of preferred stock without voting power;

"(b) In paragraph two of the bill the allegations with reference to the plaintiff's interest in the corporation known as Almy's Ltd. and W. T. Grant Company, and the success of both corporations;

"(c) In paragraph four of the bill the allegations with reference to the defendant Sanborn's ownership of preferred stock;

"(d) In paragraph five of the bill the allegation with reference to certain dividends on seventy-five shares of common stock of the defendant corporation payable to the trustees under the will of James F. Almy;

"(e) In paragraph nine of the bill the allegation to the effect that the defendant corporation does a large business with the Merchants National Bank of Salem;

"(f) In paragraph ten of the bill the allegation to the effect that in the past the profits of the defendant corporation have been paid partly in dividends and partly in the form and under the guise of salaries to the large stockholders who own and control substantially the entire issue of common stock of the corporation;

"(g) In paragraph eleven of the bill the allegations with reference to the interest of the plaintiff and certain defendants in the W. H. Scroggie Co., the reorganization thereof, the allegations in connection therewith relating to the compensation of the defendants Warren H. Butler, Sanborn and Annable, and the allegation with reference to the discharge of a debt from the defendant Sanborn to the defendant corporation.

"6. Because the allegations with reference to conspiracy and fraud contained in the eleventh and twelfth paragraphs of the bill

are not sufficiently clear and definite in that they do not disclose (a) in what respect the plaintiff's rights as a stockholder have been invaded; (b) that at the meeting at which salaries were voted, as alleged in said paragraphs, the plaintiff took, or declined to take, any action to protect her rights; (c) that in voting said salaries, as alleged in said paragraphs, there was any agreement or concert of action among the individual defendants, but on the contrary the said allegations show that the only defendants conspiring together were the defendants Annable and Sanborn, who upon the allegations of the bill, own and control only one hundred of the common shares out of a total of two thousand common shares; (d) in what respect the defendants Annable and Sanborn have exercised undue influence over the older and feebler stockholders, as alleged in paragraph twelfth of the bill; (e) clearly and in detail what misrepresentations were made to the defendant Bigelow as to the plaintiff; (f) how and what large sums of money the individual defendants have taken from the defendant corporation without color of right, because the votes referred to in the eleventh paragraph of the bill establish at least a color of right for the only sums otherwise alleged in the bill to have been taken; (g) the date or dates upon which said conspiracy took place."

The demurrer was heard by *Carroll,* J., who overruled it and, being of opinion that the questions of law raised by the demurrer so affected the merits of the controversy that they ought, before further proceedings, to be determined by the full court, reported the case upon the demurrer for determination by the full court.

Material portions of R. L. c. 159, § 12, are as follows: "The material facts and circumstances which are relied on by the plaintiff shall be stated with brevity, and immaterial and irrelevant matters shall be omitted."

*W. A. Pew,* (*S. H. Batchelder* with him,) for the defendants.

*E. A. Whitman,* for the plaintiff.

PIERCE, J. This is a suit in equity by the plaintiff and an intervenor, minority stockholders in Almy, Bigelow and Washburn, Inc., against that corporation and seven of the eight individuals who with the plaintiff Almy constituted the board of directors of the defendant corporation when the bill was brought as well as when the acts and votes of every member of that board, except the plaintiff Almy, caused the wrongs to the defendant

corporation charged in the bill.   In the Supreme Judicial Court the defendants demurred to the bill; that demurrer was overruled, and without further proceedings the cause was reported to the full court.

For the purposes of this decision the demurrer admitted that the plaintiff, Emma S. Almy, is and was one of the eight directors who compose the board of directors of the defendant corporation; that the capital stock of the corporation is divided into two thousand shares of common stock, which shares are entitled to exclusive voting power, and fifteen hundred shares of preferred stock without voting power; that the plaintiff Almy and the intervenor are the holders of five hundred and thirty-six shares of the common stock, and the defendants are the holders of thirteen hundred and sixty-seven shares of common stock; that the defendants Warren H. Butler, Annable and Sanborn, conspired with the other individual defendants to deprive and defraud the plaintiff Almy of her rights as a stockholder; that in pursuance of that purpose, on June 23, 1919, a meeting of the board of directors was held at which the plaintiff and the individual defendants were all present, constituting the whole board of directors, whereat and against the protest of the plaintiff Almy, a salary was voted to each and every member of the board, except the plaintiff, Almy; that one of the board, Helen J. Butler, renders no service therefor; that three of the board are voted and given salaries largely in excess of a fair salary to them and to each of them; that the salaries of all of them and of each of them are largely in excess of salaries which they had received for like service previous to the vote of the board; and that the board of directors voted to discharge a debt of one of the members to the defendant corporation of $2,500, being the amount illegally drawn by him from the treasury of the corporation.

The first ground of the demurrer relied on by the defendants is that the bill is multifarious.   The object of the bill primarily is to restrain the corporation from paying, and the individual defendants from receiving, under the vote of June 23, 1919, either excessive salaries or gifts and gratuities; and secondly, to require of the individual defendants the repayment to the corporation of all gifts, gratuities, and excessive salaries received by them or any of them under the aforesaid vote.   Presumably an accounting if had would show different sums to be repaid by the individual defendants, but the several obligations to repay arise from the

illegal united and joint action of the individual defendants against the right of the defendant corporation and that of the plaintiff. No relief is sought against any member of the board for the violation of any duty or obligation other than such as such members may owe to the corporation itself; and none is prayed for. "It is not indispensable that all the parties should have an interest in all the matters contained in the suit; it is sufficient if each party has an interest in some matters in the suit, and that they are connected with the others." *Lenz* v. *Prescott,* 144 Mass. 505, 513. *Robinson* v. *Guild,* 12 Met. 323, 328. *Bliss* v. *Parks,* 175 Mass. 539, 543. *Ginn* v. *Almy,* 212 Mass. 486, 493, 494.

The defendants next contend that "it does not appear from the allegations of the bill that upon notice and the reasonable request of the plaintiff the corporation has refused to take action with reference to the matters complained of in the bill, nor does it sufficiently appear from the allegations of the bill that the corporation is so far under the control of the alleged conspirators that any application for relief would be an idle ceremony." The individual defendants, who constitute seven of the eight members of the board and who hold a large majority of the voting stock of the corporation, admit by their demurrer the charges of wilful fraud and collusion, admit that they are all and each of them receiving salaries which are excessive, admit that some of them are receiving gifts or gratuities, and admit that they all voted that the corporation should pay such salaries and make such gifts, against the open protest of the eighth member of that board. In these circumstances it is plain an application to the wrongdoers to set in motion an action against themselves in the name of the corporation would be futile and unavailing; and it would be wholly contrary to established principles of justice to permit the authors of a wrong to conduct the litigation against themselves as agents of the injured corporation. *Peabody* v. *Flint,* 6 Allen, 52. *Brewer* v. *Boston Theatre,* 104 Mass. 378, 387.

The defendants next contend that the bill does not show that the plaintiff has been diligent. We are of opinion that the facts do show diligence: the plaintiff protested at the meeting, the votes were passed against her protest, and this suit was brought within six months after that meeting.

We find nothing in the allegations of the bill by way of in-

ducement which exceed the limits of fair statement contemplated by R. L. c. 159, § 12.

We are of opinion the demurrer must be overruled and the cause remanded to the county court for further proceedings.

*Ordered accordingly.*