(No. 22034.—

MAY A. RONEY *et al.* Appellants, *vs.* THE CHICAGO TITLE AND TRUST COMPANY *et al.*—(RAYMOND S. PRUITT *et al.* Appellees.)

*Opinion filed October 21, 1933—Rehearing denied Dec. 14, 1933.*

WELCH & HOFFMAN, (NINIAN H. WELCH, SOL A. HOFFMAN, and MAXWELL L. RUBIN, of counsel,) for appellants.

SILBER, ISAACS, SILBER & WOLEY, (CLARENCE J. SILBER, and HERBERT W. HIRSH, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The bill of complaint was filed in the circuit court of Cook county March 25, 1931, by appellants, May A. Roney and others, against the Chicago Title and Trust Company, a corporation, trustee, Raymond S. Pruitt, the Raymond Realty Company, a corporation, Lawrence P. Romano and Lawrence P. Romano & Co., a corporation. Raymond S. Pruitt and the Raymond Realty Company filed their general and special demurrers on June 8, 1931, alleging specially that the bill was multifarious. On January 9, 1933, the court entered its order sustaining the demurrers, and, without any request therefor on the part of complainants appearing from the record, in its same order granted leave to complainants to file their amended bill within ten days. On February 18, 1933, complainants not having filed an amended bill, the court entered its decree dismissing the original bill of complaint for want of equity as to the defendants demurring. From this decree an appeal has been perfected to this court.

It appears that appellants, who were complainants in the bill of complaint, were beneficiaries under a certain trust agreement. This agreement was made between ap-

pellants and others, who were the owners of certain real estate, and the Chicago Title and Trust Company, as trustee. Under its terms the lands were to be subdivided and sold by Lawrence P. Romano & Co., a corporation, for cash or on installment contracts. Romano & Co. was the managing agent for the project and had full right and power to enter into contracts with purchasers of lots and to collect the purchase price, and was to remit the same monthly, less its sales commissions, to the trustee. The duty of the trustee was to hold title to the land, to make conveyances to such purchasers as had completely paid for their lots, and to receive and distribute the net proceeds of the sale of lots to the beneficiaries of the trust. Appellants May A. Roney, Grace Smith and William C. Roney had only a right to receive certain stated amounts out of the proceeds of the trust, and after the payment of these amounts the remainder beneficial interest under the agreement was in Bessie H. Hensel and D. F. Walker in equal shares. Lawrence P. Romano on June 11, 1929, acquired the remainder interest of Walker. This left all the beneficial interests in the hands of appellants excepting that held by Romano. Until about March 24, 1930, the Romano corporation, as sales agent, made sales and collections, at which time Romano, in his individual capacity, assigned all his rights, privileges and beneficial interests under the trust, including all interest in certain specifically described real estate embraced in the trust estate, to Raymond S. Pruitt. At about the same time the Romano corporation assigned to Pruitt contracts for lots already sold for the trustee. The further charge was made in the bill that Romano & Co., Pruitt and the Raymond Realty Company did not fully account to the trustee for money collected from the sale of lots belonging to the trust and that Pruitt and the Raymond Realty Company were making collections without right or authority. It is further alleged in the bill that about November 4, 1930, Pruitt requested

and directed the trustee to convey forty lots, described in the assignment from Romano to Pruitt, to the latter, and that the trustee complied by making a deed of conveyance of said property to Pruitt, whereby the trustee wrongfully divested itself of legal title to said lots. Thereupon Pruitt re-conveyed title to the forty lots to the Chicago Title and Trust Company under a new trust, in which Pruitt was named as the sole beneficiary. The bill further charges that the assignment made by Romano to Pruitt did not authorize Pruitt to direct the conveyance of the aforesaid forty lots, and that the managerial and agency contract held by Romano & Co., a corporation, was not by its nature assignable. It further charges that the interest of Romano in the trust was solely that of a beneficiary and was subject to the terms of the trust, and that he, individually, was without right, power or authority to direct a conveyance of the real estate held in trust, except to purchasers who had paid the full purchase price for lots bought by them. Furthermore, he could not vest Pruitt with any such right as was attempted by his purported assignment. The prayer of the bill of complaint was for an accounting from Romano and Romano & Co. of all money and property belonging to the trust held by them, and an accounting from Pruitt and his corporation of all trust money and property received by them. It further asks to have the legal title obtained from the trustee restored to the trustee, to be held by it for the beneficial use of the *cestuis que trustent* named in the original trust agreement.

Errors are assigned on the action of the court in sustaining the general and special demurrers to the bill of complaint and in dismissing the bill as to Raymond S. Pruitt and the Raymond Realty Company, a corporation, for want of equity.

Appellees insist that by reason of the leave granted by the court below to appellants to file their amended bill of complaint, appellants were placed in the position of having

waived their right to assign errors on the rulings of the court below sustaining the demurrers to the bill of complaint. We cannot agree with this contention. That part of the order of the court granting leave to complainants is as follows: "demurrer be sustained and leave granted complainants to file their amended bill of complaint within ten days." It nowhere appears in this record that the leave was granted upon the motion, request or suggestion of appellants, nor did appellants file an amended bill of complaint. No case cited by appellees holds that a mere entry of an order giving leave to plead operates as an abandonment or waiver of the right of the pleader to assign error. There are dicta to this effect, and it has been properly held that pleading over does so operate, but in all the cases we have been able to find there was an actual pleading over or amendment made by the pleader, or the case was decided on the merits of the pleading itself. The reasoning of this court in *Jocelyn* v. *White,* 201 Ill. 16, is to the effect that where demurrants do nothing after their demurrer has been overruled, even in cases where the court has entered a rule on them to plead within a fixed time, and no further pleading is filed by the demurrants, such failure to plead indicates an election to abide their demurrer. We are of the opinion that in this case appellants indicated just as clearly an intention to abide their bill of complaint, since they filed no further pleading or amended bill within the time limited by the court's order. They remained silent and gave no expression of intention. This indicated to the court and to appellees that they intended to retain and not to waive their right to question the trial court's rulings as to the sufficiency of their bill of complaint. We hold that they owed no duty to indicate by overt act, oral or written statement, an intention to abide by their bill of complaint.

It is necessary to a decision of this case to decide but one other point, viz., was the bill of complaint multifarious

and therefore obnoxious to a special demurrer. There is no inflexible rule by which to determine whether a particular bill of complaint is multifarious but the circumstances of the particular case must govern, and where the grounds of the suit against the defendants are different, each being sufficient, in itself, to sustain a bill, and requiring different remedies, the bill will be deemed multifarious. *Kellogg* v. *Union Trust Co.* 348 Ill. 247.

Multifariousness may be defined as the improper joining of distinct and independent matters in one bill, or the improper joinder of parties not connected with the controversy in its proper and legitimate scope. A court of equity, as a court of conscience, will always, when it is necessary in order to do complete justice in the main controversy, tolerate the joining of several different matters in one suit, and the bill in such case will not be multifarious no matter how complex it may be. The mere fact that two or more distinct matters are joined in the bill merely to prevent a needless multiplicity of suits, and which in nowise prejudice or inconvenience a defendant or cause him additional expense, does not render a bill in chancery multifarious. It is the aim of equity to administer complete relief in one suit, although to do so may require both an investigation of several distinct matters and relief consisting of different elements. The court will in a single suit investigate and determine all questions involved in the main controversy and will grant all relief incidental thereto. Courts of equity allow great liberality in joining several matters in one bill when all the causes of action grow out of the same transaction, all the defendants are interested in the same rights and the relief against each is of the same general character. It is not essential that the parties each have an interest in all of the matters involved in the suit, but it is sufficient if they each have an interest in some matter involved in the suit and are connected with the other. (*King* v. *Rice,* 285 Ill. 123.) In other words, the rule is that, in accord-

ance with the purpose of equity to administer complete relief in one suit, a bill is not multifarious so long as it seeks to enforce a single right although that enforcement demands an investigation of several matters and relief of a complex character and consisting of different elements. The court will in a single suit investigate and determine all questions incidental to the determination of the main controversy and will grant all relief incident to the accomplishment of the main object of the bill. (*Stephens* v. *Collison,* 249 Ill. 225.) In the instant case the main object of the bill of complaint is to restore to the corpus of the trust certain real estate which it is charged was wrongfully by the acts of certain of the defendants taken therefrom and to compel payment of certain sums of money by certain of the defendants wrongfully withheld therefrom, and thus to restore the trust fund *in toto.* This is a single object. The fact that accounting is required of one defendant with the cancellation of its contract of agency, while an order for accounting, plus the cancellation of a supposed beneficial interest under a new trust involving the forty lots wrongfully subtracted from the corpus of the original trust, is the relief sought against another defendant, and that a reconveyance is sought from a third defendant in order to complete the full restoration and do complete equity, in no way violates the rule against multifariousness.

In our opinion the court erred in sustaining the demurrers to the bill of complaint.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to overrule the demurrers. *Reversed and remanded, with directions.*