JOSEPH W. PERRINE AND JULIA A. PERRINE,
*Complainants,*

STANDARD INVESTMENT COMPANY, a Delaware Corporation, and THOMAS A. WALKER, NORMAN C. NORMAN,
*Intervening Complainants,*

*vs.*

THE PENNROAD CORPORATION, a corporation of the State of Delaware, THE PENNSYLVANIA RAILROAD COMPANY, a corporation of the Commonwealth of Pennsylvania, WILLIAM W. ATTERBURY, EFFINGHAM B. MORRIS, JAY COOKE, LEVI L. RUE, RICHARD B. MELLON, ALBERT J. COUNTY, HENRY H. LEE, JOSEPH WAYNE, JR., AND A. H. S. POST, AND EFFINGHAM B. MORRIS, WILLIAM M. POTTS AND JOSEPH WAYNE, JR., as Voting Trustees under Voting Trust Agreement dated May 1, 1929, in respect of the common stock of The Pennroad Corporation, a corporation of the State of Delaware,
*Defendants.*

*New Castle, Mar. 9, 1934.*

*Aaron Finger,* of the firm of Richards, Layton & Finger, and *Frank M. Swacker* and *Hugh F. O'Donnell,* both of New York City, for complainants.

*Hugh M. Morris,* for intervening complainants Standard Investment Company and Thomas A. Walker.

*Charles C. Keedy,* of the firm of Keedy & Duane, for intervening complainant Norman C. Norman.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for demurrants.

THE CHANCELLOR: The voting trustees have demurred to the bill on the ground that it presents a misjoinder of causes and is multifarious.

Reference to the statement of facts preceding the opinion filed upon the motion to vacate and quash (19 *Del. Ch.* 368, 168 *A.* 196), will disclose the nature of the suit. It is not deemed necessary to repeat or to elaborate in detail what is there stated. For the purpose of emphasis it is well, however, to point out that feature of the bill which has provoked the pending demurrer.

The bill has two aspects. The first aspect has to do with the validity of the voting trust. The bill charges that the voting trust was unlawfully formed. It charges further (and this charge constitutes the principal gravamen of the

complaint under the present head) that the voting trust was a piece of mechanism fraudulently devised by the Pennsylvania Railroad Company to serve its own selfish ends; that the voting trust was in reality controlled by the railroad company through its tools, the voting trustees; and that the railroad company, through the voting trustees, so managed the affairs of The Pennroad Corporation that the latter was not and is not now permitted to function in accordance with its declared objects and purposes, viz., as an investment trust conducted for the financial welfare of its own stockholders; that its operations were and are conducted solely with reference to the interests of the railroad corporation to the great injury and damage of The Pennroad Corporation and its stockholders. Wherefore, the bill prays that the voting trust be declared to be void and the stock held in the voting trust decreed to its real owners, the holders of the voting trust certificates, free of the trust.

The other aspect of the bill calls for an accounting by the individual defendants for the large losses alleged to have been sustained as a result of the manner in which the business of The Pennroad Corporation has been conducted by the Pennsylvania Railroad Company acting through the mechanism of the voting trust and through the other individual defendants as the aiders and abetters of its allegedly fraudulent designs.

The bill therefore seeks (a) to cancel the voting trust arrangement, and (b) to exact an accounting from those who participated mediately or immediately in its wrongful operation as alleged.

Does the bill offend against the rule which forbids misjoinder of causes and multifariousness? The distinction between misjoinder and multifariousness is largely a matter of terminology. It is stated in 1 *Whitehouse, Equity Practice, pp.* 200-202, as follows:

"§ 109. Multifariousness. * * * There appears to be no positive or inflexible rule reconcilable with all the authorities as to what shall constitute multifariousness in a bill, but each case must

in a great measure be governed by its own circumstances and much must be left to the discretion of the court. As the term multifariousness is understood today, it may be briefly defined as the improper joinder of distinct and independent matters in one bill. This definition contains the essence of the offense but it embraces two distinct classes of multifariousness: (1) the simple joinder of distinct subject matters in one bill, strictly known as misjoinder of causes and (2) the joinder of distinct subject matters in one bill against several defendants some of whom have no interest whatever in one or more of the causes thus joined. This is multifariousness proper or what is more commonly understood by the term.

"§ 110. Misjoinder of Causes. By the term misjoinder of causes is meant simply the joinder of distinct causes of relief in one bill, that and nothing more; or in other words where the cases united are of so different a nature that the court regards it as inconvenient and improper to deal with them both in one suit, even though all the parties to the bill are interested in each of the causes of relief set out. Consequently though a bill with distinct causes be brought against several defendants, if all are interested in each cause the defect still belongs under the head of misjoinder; and all cases of bills containing distinct matters brought against one defendant alone, are of this class. These cases are very frequent and though strictly misjoinder of causes they have come to be known by the general term of multifariousness and must be included as one of its branches in any definition of the word today. *  *  *"

The fundamental idea which lies underneath both misjoinder and multifariousness is that causes which are distinct from each other should not be litigated in one suit. I apprehend that there is no subject of equity pleading and practice which has been more productive of reported cases than has this one of misjoinder and multifariousness; and there is none perhaps which is so little aided by the reported cases in its practical application to a given case, than is this one. "It is needless to refer to the multitude of reported cases on this question of multifariousness for the purpose of endeavoring to extract therefrom general rules." *Fleer v. Fleer Corp., et al.,* 14 *Del. Ch.* 277, 125 *A.* 411, 413. In *Cahall v. Lofland, et al.,* 12 *Del. Ch.* 162, 166, 108 *A.* 752, 754, Chancellor Curtis used the following language:

"Convenience in the administration of justice is the prime factor in considering whether a bill is multifarious, and even if it be technically objectionable by embracing more than one subject it will be sustained if such procedure is necessary or highly conducive to the administration of justice. 10 *Ruling Case Law*, 429, 430; *Brown v. Tilley*, 25 *R. I.* 579, 583, 57 *A.* 380. After all the test is whether justice can be administered between the parties without a multiplicity of suits, and if so, then the objection of multifariousness will not prevail."

Of course, the Chancellor did not mean by that excerpt to intimate that the avoidance of a multiplicity of suits was so desirable an end to be achieved that a complainant should be permitted to throw all of his grievances against the defendants into the hotch-potch of a single bill and have done with them all at one and the same time, regardless of the intimacy of relationship between them. It is still true that the causes that are joined in one bill must not be distinct. There must be some appearance of a common thread that runs through them all. When that is so, it is for the court in the exercise of its discretion to say whether the convenience of the litigation will be served or not by allowing them all to proceed to a hearing together.

It is said that in this bill the complainants have joined a cause which belongs to them in their individual right, viz., the cancellation of the voting trust, with a cause which belongs to the corporation, viz., the securing of an accounting to it, which they assert in their derivative right, and that therefore the bill is multifarious. In *Harden v. Eastern States Public Service Co.*, 14 *Del. Ch.* 156, 122 *A.* 705, it was held that a stockholder could not join in the same bill a cause belonging to him in his individual right with one which belonged to his corporation and which he asserted derivatively in its behalf. In that case, there was no connection between the two grounds of complaint. They were distinct.

While it is true that in a sense the complainants seek an individual right when they seek to free their own stock

from the terms of the voting trust, yet, inasmuch as they seek at the same time to strike down the voting trust as a whole, it may also be said that they seek relief in behalf of the corporation. What they seek to do, as expressed by their solicitor in his brief is to restore to the corporation its autonomy. This, the bill says, the corporation is now deprived of because it is dominated by persons who are alien in purpose and interest to the stockholders; and this domination has been secured and is perpetuated by a fraudulently created and illegally formed voting trust. That, in effect, is what the bill alleges and of course, on this demurrer, the bill's allegations must be taken as true. In *Fleer v. Fleer Corp., et al., supra,* it was held that the wrongful and fraudulent capture of the corporate offices of the corporation is a wrong done not in violation of the individual right of a particular stockholder, but to the corporation; and that the stockholders as a whole are commonly interested in its correction. The only distinction between that case and this one, upon the present point, consists in the method and manner of the capture complained against. It is a distinction in fact which does not give rise to a distinction in principle.

In so far as multifariousness may be thought to exist in the bill because the complaining stockholders join an individual grievance with a corporate one which they assert derivatively, the objection is not well taken.

But it is said the cause of action, which seeks an avoiding of the voting trust is essentially distinct from the cause of action which seeks an accounting and that the bill is therefore multifarious.' In other words the distinctness between the two causes of action is said to be apparent from their inherent characters and does not depend for its demonstration upon the individual and derivative right in which the complainants sue.

It appears plain that the two branches of the case are intimately related. A bill which seeks to set aside a trust and at the same time to call upon the defendant for an

accounting of the trust property and the manner of its handling is a familiar one. It does not seem necessary to cite authorities to show that such bills are not objectionable on the ground of multifariousness. The bill filed in this cause, when it is resolved into its simplest terms, is analogous to one of that type. It charges a scheme on the part of the Pennsylvania Railroad Company to organize The Pennroad Corporation, induce others to supply to it its capital and by a voting trust arrangement which it, the railroad, would dominate and control, to manage The Pennroad Corporation in the interest of itself and to the great injury and damage of Pennroad and its equitable stockholders. By means of a voting trust fraudulently conceived and operated, as the bill charges, the equitable owners of The Pennroad Corporation have been deprived of the control over it and its property and the same has been wastefully and improvidently used for the advantage of the railroad company. The bill seeks to liberate The Pennroad Corporation from the control thus fastened upon it by the scheme of the voting trust and at the same time to exact an accounting from all of those who have had any share in its injurious and damaging operation. These matters are so intimately related and so closely tied together that they may be properly described as composing the fractional parts of one integer. I do not see why the complainants should be driven to resort to separate suits in each of which a part of an integrated whole would be separately attacked. The conveniences of the administration of justice suggest that the entire series of transactions be reviewed in one suit, and the related matters heard as an entirety.

It is argued that inasmuch as the voting trustees are not before the court in their individual capacities and they cannot therefore be subjected to any decree on the accounting phase of the bill, it is improper to require them to defend the other phase of the case in which they are interested at the same time that the cause is proceeding with respect to the accounting phase. It is quite true that the

voting trustees, until they are before the court in their individual capacities, cannot be subjected to any accounting relief. See the former opinion filed in this cause, 19 *Del. Ch.* 368, 168 *A.* 196. That circumstance, however, does not justify a holding that the bill is objectionable on the ground of multifariousness. On the present state of the record the voting trustees are not interested in the accounting. If they happen to be involved in one part of a controversy which is entitled to be heard as an entirety, the fact of the controversy's breadth will not permit them to be left out of the cause which seeks to settle it.

The matter of costs incurred in the conduct of the cause affords no ground for saying that the voting trustees are entitled to be relieved of the burden of incurring that portion of them, in case the complainants eventually prevail, which the accounting would entail. This is for the reason that, should an accounting be decreed, none of the costs incident to the accounting would be taxed against the voting trustees, because as yet they are not before the court for accounting purposes.

The demurrer will be overruled.