DANIEL O. HASTINGS, as Special Trustee of STANDARD GAS AND ELECTRIC COMPANY, Debtor,

*vs.*

H. M. BYLLESBY AND COMPANY, a corporation of the State of Delaware, WALTER T. ROSEN, HARRY B. LAKE, PAUL MARSHALL ROSENTHAL, HENRY MARCH, JOHN ROSEN-THAL and EDWARD E. THALMANN, as Co-Partners doing business under the firm name and style of Ladenburg, Thalmann & Co, et al.

*New Castle, May 28 1943.*

138

*Herbert L. Cohen* (William H. Button, Francis J. Quillinan, and Sidney R. Nussenfeld, of New York City, of counsel), for complainant.

*Howard Duane* (Seibert & Riggs, of New York City, of counsel), for Standard Power & Light Corporation

*John J. Morris, Jr.,* of the firm of Hering, Morris, James & Hitchens, for H. M. Byllesby & Co.

HARRINGTON, Chancellor: This case is before the court on the demurrer of Standard Power and Light Corporation to the complainant's bill. It appears that in and prior to the month of June, 1925, Standard Gas and Electric Company, for whose benefit the suit was brought, was actively engaged in the business of acquiring, controlling and directing the activities of public utility and other companies and corporations, and in dealing in their capital stock and securities. A substantial part of its capital stock was widely owned by the public; but during the greater part of the time covered by the allegations of the bill, H. M. Byllesby and Company controlled Standard Gas and Electric Company and dictated its policies in that all or a part of its directors, officers and employees were at the same time directors, officers and employees of Standard Gas. There was an exception, however, from about June 19th, 1925, to January of 1930, during which time control of Standard Gas was exercised by Byllesby and Company, in conjunction with Ladenburg, Thalmann & Co. When Byllesby controlled Standard Gas, it frequently purchased securities and properties and resold them to that corporation at a substantial profit, though the officers and directors of Standard Gas could have purchased the same properties in the first instance, at the same, or even smaller prices. When these transactions between Byllesby and Company and Standard Gas took place, the former company had purchased the securities and properties with the intent to sell them to the latter company, and with the knowledge that Standard Gas was interested in procuring them, and could be caused to purchase from Byllesby at a cost in excess of the prices paid therefor.

The bill alleges that in each of the transactions hereinafter described the defendants acted pursuant to certain corrupt conspiracies to waste the assets of Standard Gas and Electric Company, and to secure to themselves unlawful and fraudulent profits.

The following facts are also alleged:

(1) In the month of June, 1925, United Railways Investment Company, a New Jersey Corporation, controlled Pittsburgh Utilities Corporation, a corporation of the State of New York. Both of these corporations owned large amounts of the voting stock of the Philadelphia Company, a Pennsylvania corporation, which owned and operated extensive utility properties in and around Pittsburgh, Pennsylvania; together, they controlled the Philadelphia Company. Prior to June of 1925, Ladenburg, Thalmann & Co. had acquired 493,876 shares of the preferred stock of the Pittsburgh Utilities Corporation, for which it paid the approximate sum of $6,900,000. Byllesby and Company had also acquired 80,100 shares of the preferred stock of the Pittsburgh Utilities Corporation, for which it had paid $1,328,-495.89; Byllesby had likewise acquired 123,300 shares of the common stock and 71,800 shares of the preferred stock of United Railways Investment Company, for which it paid $6,878,234.21.

In view of these facts, Byllesby and Company and Ladenburg, Thalmann & Co. became apprehensive of the danger to each of them because of the division in the control of the Philadelphia Company. Ladenburg knew that Byllesby controlled Standard Gas and Electric Company, and that Standard Gas had outstanding a large number of securities in the hands of the public.

In or about the month of June, 1925, after months of negotiations, Ladenburg, Thalmann & Co. and H. M. Byllesby and Company entered into a fraudulent and corrupt conspiracy with the following objects:

(A) To transfer to Standard Gas and Electric Company an interest in the preferred stock of Pittsburgh Utilities Corporation and in the stock of United Railways Investment Company in exchange for:

(a) Enough cash to reimburse Landenburg and Byllesby for all moneys invested by them in the stocks of Pitts-

burgh Utilities Corporation and United Railways Investment Company; and

(b) Millions of dollars profit.

(B) To arrange matters so that Ladenburg and Byllesby would still retain most of the beneficial interests in the stocks of Pittsburgh Utilities Corporation and United Railways Investment Company, held by them.

The objects of the said conspiracy were alleged to have been subsequently carried out by Byllesby and Company and Ladenburg, Thalmann & Co., by means of various transactions engineered by them, the first of which was the organization, under the laws of Delaware, of a corporation, known as Standard Power and Light Corporation. That corporation was authorized to issue 100,000 shares of preferred stock, without voting power, 410,000 shares of A common stock, without voting power, and 30,000 shares of B common stock, which had the sole voting power. The voting stock was issued at the nominal price of $1.00 per share. Landenburg subscribed for 15,000 shares of B common stock, and paid $15,000 therefor. The defendants caused Standard Gas to subscribe for the other 15,000 shares of B common stock, at the same price. At that time Standard Power of Delaware had no property except the $30,000 thus received from the sale of its B common stock. In pursuance of the said conspiracy, it was also arranged that Ladenburg should elect one-half of the directors and that Byllesby should elect the other half.

Prior thereto, a corporation known as Standard Power and Light Corporation, had been organized under the laws of the State of Maryland. At the time of its organization, it had been financed by an issue of 100,000 shares of preferred stock and 100,000 shares of common stock, for all of which Byllesby subscribed, and for which it paid $9,500,000; immediately thereafter, it resold that stock to the public for $10,000,000, thus making a profit of $500,000.

There were 400,000 shares of common stock, with voting power, and the remaining 300,000 shares were subscribed for by Byllesby and Standard Gas and Electric Company. Byllesby subscribed for 120,000 shares of this stock and paid $800,000 therefor; Standard Gas subscribed for 180,-000 shares of the same stock, for which it paid $1,200,000. By the above operations Standard Power of Maryland had $11,500,000 in cash in its treasury, and no other property, and was controlled jointly by Byllesby and Company and by Standard Gas and Electric Company.

Pursuant to the said conspiracy, Byllesby and Company and Ladenburg, Thalmann & Co. caused Standard Power of Maryland to subscribe for 100,000 shares of the preferred and 410,000 shares of the Class A common stock of Standard Power and Light of Delaware, and to pay therefor $11,400,-000 in cash, which, with the $30,000 that had been paid to Standard Power of Delaware by Ladenburg and Standard Gas left the Delaware corporation with $11,430,000 in cash in its treasury, and no other property. Byllesby and Ladenburg then caused Standard Power and Light of Maryland to exchange the stock of Standard Power and Light of Delaware, for which it had subscribed, for its own outstanding stock. The result was that Standard Power and Light of Delaware had 100,000 shares of preferred stock and 110,000 shares of A common stock owned by the public, 120,000 shares of A common stock owned by Byllesby, 180,000 shares of A common stock owned by Standard Gas and 30,000 shares of B common stock, having all the voting power, equally divided between Ladenburg and Standard Gas. Standard Power of Delaware, having $11,430,000, in cash, in its treasury, Byllesby and Ladenburg then caused it to purchase from Byllesby the 80,100 shares of preferred stock of Pittsburgh Utilities Corporation, heretofore referred to, for $2,344,500. This stock had cost Byllesby $1,328,495.89, and the sale, therefore, netted that corporation a profit of $1,-016,004.11. Byllesby and Ladenburg caused the latter com-

pany to transfer to Standard Power of Delaware the 493,876 shares of the preferred stock of the Pittsburgh Utilities Corporation, and caused Standard Power of Delaware to pay to Ladenburg therefor $8,963,640. That stock had cost Ladenburg approximately $6,900,000, so a profit of about $2,000,000 in cash was realized from that transaction. Ladenburg, having been reimbursed for the $6,900,000, which he had paid for the preferred stock of Pittsburgh Utilities Corporation, and also having been paid $15,000 for one-half of the voting stock of Standard Power of Delaware, made no further investments in these enterprises, except the sum of $500.00, hereinafter mentioned. Ladenburg, with the connivance of Byllesby, compelled Standard Gas to transfer to his company, without any consideration, 130,000 shares of Standard Power of Delaware Class A stock; and likewise, without consideration, compelled Byllesby to transfer 20,000 shares of the same stock. These shares represented that portion of the equity in the preferred stocks of the Pittsburg Utilities Corporation which had been theretofore transferred to Standard Power of Delaware. Byllesby still held 71,800 shares of preferred stock and 123,300 shares of the common stock of the United Railways Investment Company. In order to carry out the purposes of the conspiracy it was necessary to recompense Byllesby for the amount it had expended for this stock. To accomplish that purpose, Byllesby and Ladenburg organized United Railways Investment Holding Corporation, under the laws of the State of Delaware. This corporation was authorized to issue, and did issue, 70,000 shares of preferred stock, of the par value of $7,000,000, which had no voting power, and 1,000 shares of common stock, which had all the voting power. Byllesby, with the knowledge and consent of Ladenburg, transferred to United Railways Investment Holding Corporation the preferred and common stocks of United Railways Investment Company, which it had previously acquired. In payment therefor, United Railways Investment Holding Corporation issued to Byllesby 70,000 shares of its preferred stock. Byllesby, in

pursuance of the conspiracy, and by means of its control over Standard Gas, caused the latter corporation to purchase the said 70,000 shares of preferred stock for $7,000,000 in cash. The stocks which Byllesby had transferred to United Railways Investment Holding Corporation had cost $6,878,-234.21; Byllesby, therefore, made an apparent profit of $121,-765.79. Byllesby and Ladenburg, also, caused United Railways Investment Holding Corporation to issue to them the 1,000 shares of common stock, having all the voting power of that corporation, at $1.00 per share. Ladenburg had theretofore been repaid for all moneys invested in this enterprise, together with a large profit, except $15,000, which it had paid for one-half the voting stock of Standard Power and Light of Delaware, and $500.00, which it had paid for one-half the voting stock of United Railways Investment Holding Corporation. Byllesby, likewise, had been reimbursed and had received a large profit on all moneys invested in this enterprise, with the exception of $500 paid for one-half the voting stock of United Railways Investment Holding Corporation, and $800,000 paid to Standard Power of Maryland for 120,000 shares of its common stock. In order for Byllesby to be reimbursed for the $800,000 so paid, that corporation, with the knowledge of Ladenburg, caused Standard Gas to pay to it $800,000 for an assignment to Standard Gas of certain alleged, but unfounded, preemptive rights to subscribe to more stock of Standard Power and Light of Delaware. This left Byllesby with a total cash outlay in these transactions of $500.00.

In or about March of 1926, Ladenburg and Byllesby, through the control which the latter had over Standard Gas, caused it to purchase from Ladenburg the 500 shares of voting stock of the United Railways Investment Holding Corporation, which had cost Ladenburg $500, and to pay $11,-000,000 therefor. About the same time, Byllesby, by means of its control over Standard Gas, also sold to it the 500 shares of common voting stock of United Railways Investment Hold-

ing Corporation, which had originally cost $500. The consideration for this transaction was $3,500,000 in cash, 35,000 shares of Class A common stock and 30,000 shares of Class B common stock of Standard Power and Light of Delaware, owned by Standard Gas.

Sometime in the year 1930, Ladenburg sold the 165,000 shares of common stock of Standard Power and Light of Delaware for $25,000,000. On or about January 7th, 1930, Standard Power and Light of Delaware assigned and delivered all of its properties, including all of its choses in action, to Standard Gas.

The bill then alleges that as a result of these various transactions, Ladenburg had realized a profit of upwards of $38,000,000, the precise amount of which could not be ascertained without an accounting; Byllesby, also, realized a profit of upwards of $4,600,000, plus a large amount of Class A and B common stock of Standard Power of Delaware. It was also alleged that the precise amount of that profit could not be ascertained without an accounting.

(2) In continuance of the said conspiracy, the defendants arranged for Standard Gas and Electric Company to gather in all the outstanding shares of stock of United Railways Investment Company, Pittsburgh Utilities Corporation and the Philadelphia Company, which it did at a very great expense. Standard Gas was thereupon caused to transfer those securities to Standard Power and Light of Delaware in exchange for 2,612,300 shares of its participating preferred stock and a credit on an open account of $6,231,147.30. This transaction is alleged to have been wholly unfair to Standard Gas and Electric, and Standard Power of Delaware was unjustly enriched thereby by an amount that can only be ascertained by an accounting, which is asked for.

(3) The gist of the third ground of complaint is that in the latter part of the year 1930, the directors of Standard Gas and Electric Company settled two derivative stockholders' suits, involving the same cause of action, and brought

for its benefit against them and others by the expenditure of funds of Standard Gas; one suit was brought in Delaware, and the other in New York.

The bill alleges that the defendants entered into a corrupt and illegal conspiracy, the purpose of which was to cause the dismissal of the litigation above referred to by the payment to the complainants in those actions of a large sum of money, believed to be in excess of $600,000.

(4) The fourth ground of complaint is similar to the third, except that the derivative suits on behalf of Standard Gas and Electric Company against its directors and others, which were settled, are alleged not to have been commenced until November 13th, 1933, and were not settled by the expenditure of the funds of Standard Gas and Electric Company until some time in the latter part of 1934.

An accounting was also asked for on both the third and fourth grounds.

Standard Power and Light Corporation, one of the defendants, under its demurrer, claims that the bill is multifarious. As an abstract proposition of universal application it is difficult to say precisely what constitutes multifariousness and when a bill is defective, in form, on that ground. *Campbell v. Mackay*, 1 *Myl. & Cr.* 603, 618; *Fleer v. Frank H. Fleer Corp.*, 14 *Del.Ch.* 277, 125 *A.* 411. But in general it is said to be multifarious when wholly distinct and independent matters are joined against several defendants. (*Perrine v. Pennroad Corp.*, 20 *Del.Ch.* 106, 171 *A.* 733; *Mahoney v. Healy*, 9 *Del.Ch.* 273, 81 *A.* 583; *Story's Eq.Pl.*, § 271) ; when one or more of several defendants is in no way interested in a large part of the relief sought by the complainant. *Pointon v. Pointon*, L.R. 12 *Eq.* 547, 551; *Saxton v. Davis*, 18 *Ves.* 80; *Story's Eq. Pl.*, § 530. A multiplicity of actions should always be avoided when justice can be done in one proceeding (*Mahoney v. Healy, supra*) ; but a complainant is not usually permitted to join all of its separate grievances against several persons or corporations in a single suit,

regardless of any intimacy or relationship between the causes alleged. *Perrine v. Pennroad Corp., supra; Mahoney v. Healy, supra*. It seems, however, that multifariousness, within the usual meaning of that term, is not a rigid and uncompromising test with respect to the validity of a bill. It is little more than a general administrative standard, by which the exercise of jurisdiction is ordinarily governed, but its application to a particular case largely depends on whether complete justice to all parties can be done in a single bill; on whether the apparent convenience of that procedure is greater than any probable injustice to a demurring defendant that could grow out of any confusion of issues at the final hearing. *Gaines v. Chew, 2 How.* 619, 11 *L.Ed.* 402; *Cahall, Rec., v. Lofland, 12 Del. Ch.* 162, 108 *A.* 752; *Bolles v. Bolles, 44 N.J.Eq.* 385, 14 *A.* 593; *Pointon v. Pointon, L.R.* 12 *Eq.* 547; *Story's Eq.Pl.,* § 271, *note*. In applying these principles each case is necessarily governed by its own facts, but when the various allegations of the bill show a single object or purpose, and seek to enforce one general and common right; or, as has been said, a "common thread" runs through them, the bill will be sustained. *Perrine v. Pennroad Corp., supra; Cahall, Rec., v. Lofland, supra; Gray Co. v. Alemite Corp., 20 Del. Ch.* 244, 174 *A.* 136. It is not indispensable that all defendants should have an interest in all matters involved in the suit; if each party has an interest in some matters, and they are connected in some manner with the others, that is sufficient. *Almy v. Almy, Bigelow & Washburn, Inc.,* 235 *Mass.* 227, 126 *N.E.* 419; *Roney, et al., v. Chicago Title & Trust Co., et al.,* 354 *Ill.* 144, 188 *N.E.* 194. If the case against one or more defendants is so entire that it cannot be prosecuted in several suits, but another defendant is a necessary party, with respect to some portion of it, the bill is not usually regarded as multifarious as to that defendant. *Inman v. Wearing,* 64 *Eng. Repr.* 680; *Attorney General v. Corporation of Poole,* 41 *Eng. Repr.* 7. In other words, "a demurrer for multifariousness will hold only where the plaintiff claims

several matters of different natures; but when one general right is claimed by the bill, and the defendants have separate and distinct rights, a demurrer will not hold." *Willis' Pleading in Equity* (35 *Law Library* 211, *note*) ; *Salvidge v. Hyde,* 56 *Eng.Repr.* 847.

In general, the complainant's bill is based on an alleged fraudulent conspiracy by and between H. M. Byllesby and Company and Ladenburg, Thalmann & Co., to use the control which one, or both, had at certain specified times over Standard Gas and Electric Company, to waste its assets, and to secure to themselves large unlawful profits, at its expense. All, or a part, of the officers, directors and employees of Standard Gas were also officers, directors and employees of one, or both, of the alleged conspirators. Byllesby and Company and Ladenburg, Thalmann & Co., in order to do away with the dangers to them, growing out of their divided control over the Philadelphia Company, conspired to transfer to Standard Gas and Electric Company at a tremendous profit to themselves, an interest in the preferred stocks of Pittsburgh Utilities Corporation and United Railways Investment Company, which together controlled the Philadelphia Company. Moreover, matters were to be so arranged that Byllesby and Company and Ladenburg, Thalmann & Co., would still retain most of the beneficial interest in these stocks. But the complainant also alleges other fraudulent acts by Byllesby and Ladenburg and others in pursuance of the conspiracy, and at the expense of Standard Gas.

Four causes of actions against various named defendants are stated in the bill, and the question is whether there is such a reasonable connection between them that a joinder in one bill, to remedy the alleged wrongs to Standard Gas, is permissible. The first cause sets out the various steps by means of which the designated corporate stocks were caused to be transferred to Standard Gas, and, in general, the ultimate profitable results to Byllesby and Company and to Lad-

enburg, Thalmann & Co. from these transactions. Standard Power and Light Corporation of Delaware is alleged to have been the instrumentality by which that fraud was largely perpetrated; but no unlawful acts were charged, and no relief was sought, against it. The apparent theory of the bill is that, by reason of the use of its assets to perpetrate the fraud, Standard Power had certain rights of action against the conspirators which were assigned to Standard Gas, and which the trustee for that corporation seeks to enforce.

Standard Power is merely an interested defendant in the second cause alleged. The complainant thereby seeks certain relief against it because, in furtherance of the said conspiracy, Standard Gas and Electric Company was caused to gather in all of the outstanding shares of stock of United Railways Investment Company, Pittsburgh Utilities Corporation and the Philadelphia Company; that was accomplished at a great expense to Standard Gas. The latter corporation was then caused to transfer these securities to Standard Power and Light at a wholly inadequate price, whereby the latter corporation was unjustly enriched by a large sum of money. Relief is sought against it on that ground.

The third and fourth causes of action allege that certain derivative stockholders' suits were brought on behalf of Standard Gas against its directors and others to have a corporate contract with Byllesby and Company and Ladenburg, Thalmann & Co. declared void for fraud, and to restrain its being carried out on that ground.

The present bill alleges that pursuant to the corrupt and fraudulent conspiracy between Byllesby and Company and Ladenburg, Thalmann & Co., to waste the assets of Standard Gas, and by means of their control over it, they caused that litigation to be settled by the payment of large sums of money by Standard Gas to the complainants in those suits. Byllesby and Company and Ladenburg, Thalmann & Co. are defendants in all the causes alleged in the bill, except the second cause, and it cannot be said that the alleged rights of ac-

tion are wholly unconnected. A common thread sufficiently appears to permit their joinder in one bill, without any injustice to Standard Power.

But it does not clearly appear that the complainant trustee has a right of action against Standard Power, on behalf of Standard Gas. His theory is that a fiduciary relation existed between them, and that, because of the inadequacy of the remedy at law to redress the wrongs done by Standard Power, equity has concurrent jurisdiction. (*Bovay v. Byllesby & Co.*, 25 *Del. Ch.* 1, 12 *A.* 2d 178, *Id.*, 26 *Del. Ch.* 69, 22 *A.* 2d 138) ; but control by Standard Power is not clearly or sufficiently alleged. It does not appear that that corporation, or any of its officers or directors, owned a single share of stock of Standard Gas, or that there was any fiduciary relation, whatever, between them.

The demurrer is sustained on that ground.